[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10609

_____

D.C. Docket Nos. 9:18-cr-80181-RLR-1,
9:16-cr-80098-RLR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANDRES GOMEZ,
a.k.a. Andres Gomez Avellaneda,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 14, 2020)

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Defendant Andres Gomez challenges the district court's order that sentenced

him to a 46-month term of incarceration (for illegally re-entering the United States)

and a 21-month term (for violating the terms of his supervised release), with each sentence to run consecutively to one another and to a separate, undischarged eight-year state prison sentence. Gomez contends that this sentence is unreasonable because the district court failed to properly consider and weigh the sentencing factors in 18 U.S.C. § 3553(a). After careful review of the record, we affirm Gomez's sentences.

## I.    Factual and Procedural Background

Gomez's appeal is a consolidation of two federal actions. The first, Case No. 9:16-cr-80098-RLR-1, is the case against Gomez for violating the terms of a previously imposed term of supervised release. The second, Case No. 9:18-cr-80181-RLR-1, is the case against Gomez for illegally re-entering the United States in 2017 or 2018. We discuss each in turn before turning to the merits of this appeal.

### a. Gomez's Violation of Supervised Release

Gomez, a Mexican citizen, has an extensive history of illegally coming into the United States. He was voluntarily removed from the country in 1998. He subsequently re-entered the United States without authorization and was again removed in 2002. But he later sneaked back into the United States without authorization for (at least) the third time, and in May 2016 was arrested in Florida on state charges.

2

The May 2016 arrest put Gomez back on U.S. Immigration and Custom Enforcement's ("ICE") radar, and on June 23, 2016, he was indicted for having unlawfully re-entered the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). Gomez pled guilty on August 10, 2016, and was sentenced to 12 months' imprisonment, followed by a two-year term of supervised release.

The district court's sentence contained the standard mandatory conditions of supervised release, including a prohibition against committing another federal, state, or local crime. Because of Gomez's immigration status, his sentence also included a special condition of supervised release, which required him to be surrendered to ICE's custody for removal proceedings at the completion of his term of imprisonment. And while Gomez's sentence contained a standard condition of supervised release that he report to his designated U.S. Probation Office within 72 hours of his release from prison and within the first fifteen days of each month, Gomez was not required to report to Probation so long as he resided outside of the United States. If Gomez reentered the United States within the term of his supervised release, though, he was required to report to the nearest U.S. Probation Office within 72 hours of his arrival.

Gomez's term of imprisonment ended in June 2017, and he was deported to Mexico in July 2017. He didn't stay away for long. Gomez came back to the United States in October 2017 and was arrested in Florida on charges of sexual battery with

3

threat to retaliate on May 28, 2018.  The facts of that incident were recounted in his Presentence Report ("PSR"):  Gomez spent much of May 27, 2018 with the victim, and when she went to drop him off, Gomez assaulted and raped her.  Gomez then threatened to hurt the victim and her son, who has Down's Syndrome, if she reported him, and claimed that he had someone watching her house.  When the victim later, at the direction of law enforcement, called Gomez, he again threatened her and her children.  Gomez pled guilty following his arrest and was sentenced to eight years' imprisonment.[1]

On June 1, 2018, the U.S. Probation Office filed with the district court a petition to revoke Gomez's supervised release, charging Gomez with three violations of his supervised release.  The first charge alleged that Gomez violated the special condition of his supervised release by re-entering the United States and failing to report to the nearest Probation Office within 72 hours.  The second and third charges asserted that Gomez violated the mandatory condition of his supervised release that he refrain from transgressing the law, specifically by committing sexual battery with threat to retaliate, in violation of Fla. Stat. 794.011(4)(b), which is a first

---

[1] Gomez did not object to, and thus admitted, the accuracy of the factual statements in his PSR.  *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("Facts contained in a [PSR] are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity.") (citation and quotation marks omitted), *cert. denied*, 558 U.S. 906 (2009).

degree felony under Florida law (Charge 2), and by illegally re-entering the United States after removal, in violation of 8 U.S.C. § 1326(a) and (b)(1) (Charge 3).

Gomez admitted to the first and third charges at a hearing before a magistrate judge on October 19, 2018. As to the second charge, Gomez admitted, as he had done in Florida state court, to the lesser-included offense of sexual battery in violation of Fla. Stat. 794.011(5)(b), a second-degree felony under Florida law. The magistrate judge issued his Report & Recommendation ("R&R") on October 19, 2018, recommending that the district court accept Gomez's admissions and find him guilty of committing the three violations of his supervised release. The district court adopted the R&R on November 13, 2018.

### b. Gomez's Illegal Re-Entry

The third charged violation of Gomez's violation of supervised release—his illegal re-entry to the United States in 2017 or 2018—constituted a stand-alone federal offense. Accordingly, on September 13, 2018, a federal grand jury indicted Gomez of having unlawfully re-entered the country on or about May 28, 2018, in violation of 8 U.S.C. § 1326(a) and (b)(1). He pled guilty to the indictment on November 19, 2018.

### c. Gomez's Sentencing

Gomez's cases were consolidated for sentencing, which took place on January 30, 2019. As to Gomez's violation of his supervised release, Probation calculated

that Gomez's imprisonment range under the Sentencing Guidelines ("Guidelines") was 15 months to 21 months, based on a total offense level of 13 and a criminal-history category of II.  The district court was statutorily authorized to revoke Gomez's supervised release and send him to prison for up to two years for this offense.  *See* 18 U.S.C. § 3583(e)(3).

Regarding his illegal-reentry conviction, Probation calculated that Gomez's Guidelines range was 46 to 57 months.  This was based on a total offense level 19, which included a ten-point enhancement pursuant to U.S.S.G. § 2L1.2(b)(3)(A) for Gomez's sexual-battery conviction, and a criminal-history category of IV, which was also based, in part, on Gomez's sexual-battery conviction.  The maximum term of imprisonment for this offense was ten years.  *See* 8 U.S.C. § 1326(b)(1).

The district court sentenced Gomez to 21 months' imprisonment for violating his supervised release.  The court explained that the punishment was not simply because Gomez had again illegally come into the country (though that "would be concerning"), but that a sentence at the top of the Guidelines range was necessary to maintain respect "for all of the [18 U.S.C. §] 3553 factors that must be accomplished, respect for the law, protecting the public and deterring Mr. Gomez and others."  ECF No. 33 at 16.[2]

---

[2] Citations to "ECF No." in this opinion are citations to the electronic case-filing numbers listed in the docket sheet of *United States v. Gomez*, Case No. 9:18-cr-80181-RLR-1 (S.D. Fla.) (Jan. 31, 2019).

For his illegal re-entry charge, the district court sentenced Gomez to 46 months' imprisonment and two years of supervised release, noting that Gomez had previously re-entered the country multiple times.

The district court ordered that Gomez's sentences run consecutively to one another, and that the entire 67-month term run consecutively to his eight-year sentence for sexual battery.  The court acknowledged the overlap between Gomez's federal and state convictions but concluded that consecutive sentences were necessary, "given the history as conveyed about him in the [PSR], that he has [not] shown any respect for the law or that he has been deterred thus far by the sentence that the Court has imposed in the prior deportations."  ECF No. 33 at 19.  The district judge also explained that it was "gravely concerned about deterring" Gomez and "protecting the public from" him, emphasizing that "what Mr. Gomez did to the [rape] victim" gave her "grave concern."  *Id.* at 19–20.

Gomez timely appealed both sentences and now argues that his sentences were substantively unreasonable.  We disagree and affirm.

## II.    Standards of Review

We review the reasonableness of the district court's sentences for an abuse of discretion, employing a two-step process.  *See United States v. Trailer*, 827 F.3d 933, 935–36 (11th Cir. 2016) (per curiam).  At the first step, we ensure that the district court did not commit a significant procedural error, such as miscalculating

the Guidelines range, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain its chosen sentences. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

If the district court's decision contains no significant procedural error, we review the substantive reasonableness of the sentences "through the prism of abuse of discretion." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

We likewise review for abuse of discretion the district court's decision to order the federal sentences to run consecutively to Gomez's state-imposed sentence. *See United States v. Covington*, 565 F.3d 1336, 1346 (11th Cir. 2009).

Gomez argues that our standard of review for this issue should be *de novo*, citing our decisions in *United States v. Perez*, 956 F.2d 1098 (11th Cir. 1992) (per curiam), and *United States v. Fuentes*, 107 F.3d 1515 (11th Cir. 1997). Neither case instructed that we review *de novo* the issue that we face today. Our binding precedent is clear that the appropriate standard is abuse of discretion. Nevertheless, we take this opportunity to explain why.

8

First, we note that *Perez* involved a sentence imposed under the mandatory Guidelines. There, the Guidelines required a concurrent sentence. 956 F.2d at 1103. But the district court stated that it had imposed consecutive sentences as a departure from the Guidelines. *Id.* So the question we addressed was "whether the district court ha[d] the authority to *depart* from the Sentencing Guidelines and order that [the defendants'] sentences be served consecutively." *Id.* at 1103 (emphasis in original). Our *de novo* review in *Perez*, then, was of a purely legal question: whether the district court had authority to depart from the Guidelines to impose a consecutive sentence.

The *Perez* issue is inapplicable here. Indeed, it is undisputed that the district court had the authority to order that Gomez's federal sentences run consecutively to his state sentence. *See* 18 U.S.C. § 3584(a); U.S.S.G. § 5G1.3(d). The applicable guideline provides, as relevant here,[3] that in a "case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). Therefore, the very wording of the guideline—"may be imposed"—anticipates that the district judge has discretion to impose a sentence

---

[3] U.S.S.G. § 5G1.3(a)-(c) govern whether a sentence should be imposed consecutively or concurrently in situations that are not applicable here.

consecutively, concurrently, or partially concurrently.  And there is no legal standard other than abuse of discretion that would allow us to assess the legality of a sentence imposed under this guideline.  So the issue in Gomez's case is whether the district court's decision that the sentences run consecutively to one another and to the undischarged state sentence was reasonable and adhered to the policy statements set forth in 18 U.S.C. § 3553(a).  Rather than trying to put ourselves into the district judge's seat, we review such a judgment call under the familiar abuse-of-discretion standard.  *Perez* does not support a different result.

Neither does *Fuentes*.  Like Gomez, Fuentes was sentenced in federal court to a term of imprisonment to run consecutively to a previously imposed state sentence. *See Fuentes*, 107 F.3d at 1517.  On appeal, Fuentes argued that the district court had erred in failing to apply the then-current version of Section 5G1.3(b) of the Guidelines, while the Government argued that Section 5G1.3(b) had no bearing on the case.  *See id.* at 1520.  In reviewing the lower court's decision, we concluded that "[t]he district court's determination that Fuentes' sentence should run consecutively to his undischarged state sentences resulted from its application of this guideline to the facts.  We therefore review this determination *de novo*."  *Id.*

As in *Perez,* our *de novo* review in *Fuentes* was of a purely legal question: whether the district court applied the proper Guidelines provisions.  We were not tasked with reviewing whether the district court had acted reasonably pursuant to an

10

indisputably applicable Guideline that endowed the district court to act within its discretion.

We recognized this distinction in *United States v. Andrews*, 330 F.3d 1305, 1307 (11th Cir. 2003) (per curiam), *cert. denied*, 540 U.S. 1003 (2003). The defendant in that case, while on federal supervised release, was charged with drug possession, bribing a prison guard, and possession of a counterfeit driver's license. *See id.* at 1306. The district court revoked Andrews's supervised release while some of those charges were still pending and sentenced him to a 24-month term of imprisonment, ordering that the sentence be served consecutively to any term of imprisonment that he received for the substantive crimes he committed. *See id.*

On appeal, Andrews challenged whether the district court "ha[d] the authority to impose a consecutive sentence to an unimposed, future sentence." *Id.* We divided our review into two questions: "The first [was] whether the district court had the authority to impose the type of sentence it did. The second [was] whether, while acting within the scope of its authority, the district court committed some type of reversible error." *Id.* at 1307. As to the latter, we applied the abuse-of-discretion standard. *See id.* ("As to the appropriateness of a consecutive sentence, Andrews has not shown that the district court abused its discretion in imposing a consecutive sentence in his case.").

11

As in *Andrews*, the issue we face here concerns whether the court erred "while acting within the scope of its authority." *Id.* We therefore review the entirety of the district court's sentencing order for an abuse of discretion.

### III.   Discussion

#### a.  The 18 U.S.C. § 3553(a) Sentencing Factors

Title 18, United States Code, § 3553(a) provides district courts with a list of factors to consider in crafting a defendant's sentence. District courts must account for factors unique to the defendant, such as the nature and circumstances of the offense and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Section 3553(a) also requires the district court to consider how its sentence reflects and furthers certain societal values, including promoting respect for the law, providing "just punishment" for the offense, deterring criminal conduct, and protecting the public from the defendant. *See id.* at § 3553(a)(2)(A)–(C).[4]

A district court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the purposes of Section 3553(a). *Id.* at § 3553(a). Our task is to determine whether the district court abused its discretion in its endeavor and "fail[ed] to achieve the purposes of sentencing under 18 U.S.C. § 3553(a)." *United*

---

[4] The district court must also think about "the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *United States v. King*, 751 F.3d 1268, 1281 n.6 (11th Cir. 2014) (per curiam) (citing 18 U.S.C. § 3553(a)(3)–(7)), *cert. denied*, 574 U.S. 946 (2014).

*States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013), *cert. denied*, 571 U.S. 825 (2013).

We have previously held that a district court abuses its discretion and renders a substantively unreasonable sentence if it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted), *cert. denied*, 563 U.S. 917 (2011). We explained further in *Irey* that "a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably." *Id.*

Although the district court must consider each of the factors listed in § 3553(a), it need not discuss each of those factors on the record. *See United States v. King*, 751 F.3d 1268, 1281 (11th Cir. 2014) (per curiam), *cert. denied*, 574 U.S. 946 (2014). "It is sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account." *United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009), *cert. denied*, 559 U.S. 1023 (2010).

In fashioning a sentence, the district court enjoys discretion to give greater weight to one or more factors than to the others. *See Rosales-Bruno*, 789 F.3d at 1254. We will not second-guess that decision, "as long as the sentence ultimately

13

imposed is reasonable in light of all the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (citation and quotation marks omitted), *cert. denied*, 563 U.S. 1032 (2011).  Even if we disagree with how the district court weighed the sentencing factors, "we will only reverse a procedurally proper sentence if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. McBride*, 511 F.3d 1293, 1297–98 (11th Cir. 2007) (per curiam) (citation and quotation marks omitted).

A district court is authorized to revoke a defendant's supervised release and impose a prison term if it finds, by a preponderance of the evidence, that the defendant violated a condition of supervised release.  *See Trailer*, 827 F.3d at 936 (citing 18 U.S.C. § 3583(e)(3)).  In doing so, the court is required to consider most of the § 3553(a) factors.  *See* 18 U.S.C. § 3583(e).

Where multiple terms of imprisonment are imposed on a defendant, a district court must consider the § 3553(a) factors in determining whether those sentences should be run concurrently or consecutively.  *See* 18 U.S.C. § 3584(b).  The primacy of the § 3553(a) factors is further buttressed by the commentary to the Guidelines, which notes that "[f]ederal courts generally 'have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other

sentences that they impose, or that have been imposed in other proceedings, including state proceedings.' *See Setser v. United States*, 132 S. Ct. 1463, 1468 (2012); 18 U.S.C. § 3584(a). . . . Exercise of that discretion, however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission." U.S.S.G. § 5G1.3 cmt. Background.[5]

### b. <u>The District Court's Sentences Were Not an Abuse of Discretion</u>

Gomez makes two arguments for his contention that the district court's order is substantively unreasonable. First, he asserts that the district court failed to properly consider the deterrent effect of the eight-year sentence that he received for sexual battery. Second, he contends that the district court failed to adequately consider that Gomez's conviction for sexual battery had already been factored into his Guidelines range, as it had increased both his total offense level and his criminal-history category for his illegal-re-entry conviction. Gomez made each of these arguments at his sentencing, but the district court was not persuaded.

---

[5] In deciding whether to impose consecutive sentences, the Guidelines also instruct the district court to consider "the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence"; "the time served on the undischarged sentence and the time likely to be served before release"; "the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court"; and "any other circumstance relevant to the determination of an appropriate sentence for the instant offense." U.S.S.G. § 5G1.3(d), cmt. n.4(A)((ii)–(v)).

It is unclear to us from these arguments whether Gomez intended to claim that one or both of his federal sentences were unreasonable, or that it was unreasonable for the district court to order that those federal sentences run consecutively to his state-imposed sentence.[6] But it ultimately does not matter, because none of Gomez's arguments convince us that any aspect of the district court's order was unreasonable.

Regarding Gomez's first argument, while the district judge did not specifically mention the deterrence effect of Gomez's sentence for sexual battery, she noted the overlap between the federal and state cases and commented that "the State Court [is] taking care of that crime." ECF No. 33 at 20. But the district court nevertheless concluded that, "given all of the concerns that the Court has, not seeing any of it outweighed by mitigating history and characteristics of the Defendant," its decision to impose its sentence consecutively to the state sentence was warranted. *Id.*

This was a reasonable conclusion. The district court was required to consider whether its sentence "afford[ed] adequate deterrence to criminal conduct." *See* 18

---

[6] Gomez does not argue that the district court erred in ordering his federal sentences to be run consecutively to one another. Such an argument would not have been successful. In addition to the fact that 18 U.S.C. § 3584(a) authorizes this sentence, the Guidelines permit—and, in fact, encourage—the district court to impose consecutive sentences. *See* U.S.S.G. § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."). For the same reasons that the district court's sentences were reasonable, discussed *infra*, the decision to impose consecutive federal sentences was well within the district court's discretion.

U.S.C. § 3553(a)(2)(B).  It is clear from the record that the district judge did just that, noting that she was "gravely concerned about deterring" Gomez because his conduct showed that none of his prior sentences or deportations had adequately deterred him.  ECF No. 33 at 19.  The district judge was not required to conclude that the state sentence for sexual battery would discourage Gomez from committing another crime, particularly when ample evidence suggested that court punishments were of minimal deterrence for Gomez.  The court did not abuse its discretion in concluding a longer sentence was justified.[7]

Nor are we persuaded by Gomez's second argument, that the district court failed to consider the impact the Florida conviction had on Gomez's Guidelines range.  The court stated that it had read the PSR and confirmed with the parties that the Guidelines ranges were correct.  The district judge was thus aware of this calculation, even if she gave it little weight.  We see no reason to second-guess that decision.

---

[7] In recounting Gomez's sexual-battery conviction during his federal sentencing hearing, the district judge erroneously said that Gomez had been convicted of Florida first-degree sexual battery.  Gomez's counsel objected, noting that Gomez had admitted to second-degree sexual battery.  The district judge acknowledged her error and clarified that she was still going to issue the same sentence.  Gomez argues now that district judge's misstatement somehow establishes the unreasonableness of her sentence.  We fail to see how.  A primary difference between the two crimes, at least in cases like Gomez's, is that unlike first-degree sexual battery, Fla. Stat. § 794.011(4)(b), a defendant who commits second-degree sexual battery "does not use physical force and violence likely to cause serious personal injury."  Fla. Stat. § 794.011(5)(b).  The district judge did not base her sentence on any force that Gomez did (or did not) apply in committing sexual battery.  She focused instead on the threats Gomez made to the victim and to her son.  Gomez was not harmed by the district judge's misstatement, which she corrected.

17

Even if we were to conclude that Gomez's arguments had appeal, the factors that the district court articulated establish the sentences' reasonableness. In addition to deterrence, the district judge focused on ensuring that her sentence promoted respect for the law (pursuant to 18 U.S.C. § 3553(a)(2)(A)) and adequately protected the public from the defendant (18 U.S.C. § 3553(a)(2)(C)).

The district judge was certainly justified in emphasizing those factors. Gomez's PSR details his history of violence. The district court focused primarily on Gomez's sexual-battery conviction, in which he "threatened to hurt [the victim] and her son, who has Down[']s Syndrome . . . and the[] ensuing threatening messages that he left for her." ECF No. 33 at 20. Moreover, Gomez was arrested in 2016 after violating a domestic-violence protective injunction. During that incident, Gomez chased another victim to her car and punched through her car window. Given this history, it was hardly unreasonable for the district court to be "very concerned about protecting the public from" Gomez. *Id.*

Two other aspects of Gomez's sentence demonstrate the reasonableness of the district court's decision. We have previously said that a sentence that is well below the statutory maximum penalty is an indicator of reasonableness. *See United States v. Nagel*, 835 F.3d 1371, 1377 (11th Cir. 2016). In this case, Gomez's 46-month sentence for illegally re-entering the country fell well below the ten-year statutory maximum. *See* 8 U.S.C. § 1326(b)(1). And while a sentence within the guidelines

18

range is not presumed to be reasonable, we have said that we "ordinarily expect [such] a sentence . . . to be reasonable." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam), *cert. denied*, 557 U.S. 928 (2009); *see also Nagel*, 835 F.3d at 1377 ("[T]he reasonableness of the sentence is supported by its position at the lowest end of the applicable guideline range."). Both of Gomez's sentences were within their respective Guidelines ranges, and his sentence for illegally re-entering the United States was at the low end of that range.

The district court recognized that Gomez's 67-month sentence, ordered to run consecutively to his undischarged state sentence, represents "a significant period of time for Mr. Gomez to spend in prison" but determined that "his actions, in the Court's view, warrant it in this instance." ECF No. 33 at 21. We cannot conclude from this record that the district court abused its discretion in reaching that decision.

## IV.    Conclusion

The district court's order is **AFFIRMED**. Oral argument in this case is **CANCELED**.

19