[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14163
Non-Argument Calendar

_____

D.C. Docket No. 1:04-cr-00288-ODE-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOPAZ DARDEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 30, 2020)

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

On our own motion, we vacate our prior opinion, and substitute it with the following opinion, which has been revised only as to one sentence in the second-to-last paragraph.  Appellant's motion for panel rehearing is denied as moot.

Topaz Darden appeals his twenty-one month sentence imposed following the revocation of his supervised release under 18 U.S.C. section 3583(e)(3).  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After serving his prison sentence for possession of a firearm as a convicted felon, in violation of 18 U.S.C. section 922(g), Darden began his three years of supervised release.  The terms of his release prohibited him from committing another crime.  Within months of finishing his prison term, the government filed a petition alleging that Darden committed seven violations of his release conditions, including receiving stolen property, in violation of Georgia law.  See O.C.G.A. § 16-8-7(a).  As to the receiving stolen property violation, the petition alleged that Atlanta police officer James Dimaso pulled over and arrested Darden after receiving a report that the car he was driving was stolen.  The petition also alleged that Darden, in a post-arrest interview, said he borrowed the car from Eddie McDonald two days prior and had attempted to return the vehicle but could not find McDonald.

The district court held a hearing on the petition.  Darden admitted or did not dispute five of the violations.  He contested the remaining two, including the one charging him with receipt of stolen property.  Officer Dimaso testified.  He said that

2

on June 21, 2019 he pulled Darden over after learning the car Darden was driving had been reported stolen. After Darden pulled over, he immediately jumped out of the vehicle, something Officer Dimaso testified was unusual for a traffic stop. The officers on the scene, with weapons drawn, ordered Darden back into the car before they arrested him and placed him in the back of Officer Dimaso's patrol car. Officer Dimaso ran Darden's license and found that it was not valid. While in Officer Dimaso's patrol car with Darden, a police recruit mistakenly identified the stolen car's owner as Eddie McDonald. In a recorded post-arrest interview, Darden told officers that he had permission to use the car given by its owner, who he identified as Eddie McDonald, also called Henry. Darden acknowledged in the interview that he had agreed to return the car to McDonald on June 19 and had attempted to do so but could not find McDonald. He also could not provide any contact information for McDonald. Albert Rushing in fact owned the car and had reported to the police that it was stolen on June 14. Darden's sister-in-law, Tammy Simmons, also testified at the hearing. She had seen Darden and Rushing together on previous occasions with the car, including after Rushing reported it stolen.

The district court credited the government's evidence and Officer Dimaso's testimony and ruled that the government had established the violation by a preponderance of the evidence. It found that at the time of his arrest, Darden was driving the stolen car. It also found that Darden appeared extremely upset and

nervous when questioned by officers.  Darden, according to the district court, "kept hemming and hawing" and would not answer the officers' questions.  That conduct reflected Darden's "feeling of guilt," said the district court.

The district court also found that Darden had committed all six other violations and calculated a guideline range of twenty-one to twenty-seven months based on the grade B receipt-of-stolen-property violation and Darden's criminal history category of VI.  The court revoked Darden's supervised release and sentenced him to twenty-one months' imprisonment and one year of supervised release.

## STANDARD OF REVIEW

We review for an abuse of discretion a district court's revocation of supervised release.  United States v. Cunningham, 607 F.3d 1264, 1266 (11th Cir. 2010).  We review its factual findings for clear error.  United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

## DISCUSSION

Darden argues that the evidence was insufficient to show that he received stolen property in violation of Georgia law because the government failed to demonstrate that (1) the car was stolen, (2) Darden knew the car was stolen, and (3) he did not have the intent to return it to its owner.

The district court may "revoke a term of supervised release" and impose a prison sentence if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); see also United States v. Gomez, 955 F.3d 1250, 1257–58 (11th Cir. 2020). The United States Sentencing Guidelines establish three grades of supervised release violations. See U.S.S.G. § 7B1.1(a). A defendant commits a grade B violation when he engages in "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." Id. § 7B1.1(a)(2). If the defendant commits a grade B violation and has a criminal history category of VI, the applicable guideline range is twenty-one to twenty-seven months' imprisonment. Id. § 7B1.4(a).

In Georgia, a person commits theft by receiving stolen property "when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." O.C.G.A. § 16-8-7(a). If the value of the stolen property is at least $1,500.01 but less than $5,000, the term of imprisonment is between one and five years. Id. § 16-8-12(a)(1)(C).

The district court had sufficient evidence to find by a preponderance that (1) the car was stolen, (2) Darden knew it was stolen, and (3) Darden did not have the intent to return the car to Rushing. As to the first issue, "[t]here must be proof

of a larcenous taking." Johnson v. State, 511 S.E.2d 921, 923 (Ga. Ct. App. 1999). The district court found that Rushing owned the car and that it had been stolen. The government introduced the police report showing that the car had been stolen.[1] The government also submitted an indictment brought by the State of Georgia against Darden. The indictment alleged that Darden had received Rushing's stolen car knowing that it was stolen. And the district court found that Rushing had testified before the Georgia grand jury and that he was willing to testify at Darden's trial.

For the knowledge element, "possession of recently stolen property is not alone sufficient to sustain a conviction for receiving stolen property, [but] guilt may be inferred from possession along with other evidence—including circumstantial evidence—of guilty knowledge which would excite suspicion in the mind of an ordinarily prudent person." Priester v. State, 549 S.E.2d 429, 434 (Ga. Ct. App. 2001); see also Miller v. State, 561 S.E.2d 810, 813 (Ga. 2002). "Whether the explanation of the possession offered by the defendant in his statement alone is a satisfactory explanation, is a question for the factfinder." Bradley v. State, 731 S.E.2d 371, 373 (Ga. Ct. App. 2012) (alteration adopted). "Knowledge that goods

---

[1] "Although the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic." United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994). To decide whether to admit hearsay, the district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." Id.; see also Fed. R. Crim. P. 32.1(b)(2)(C). Darden made no hearsay objection when the government introduced its evidence and does not make a relevant hearsay argument on appeal, so we do not consider the issue. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

are stolen may well be deduced by the [factfinder] from the defendant's conduct and behavior, the character of the person from whom the goods were received, and the nature of the stolen property." Williams v. State, 540 S.E.2d 305, 310 (Ga. Ct. App. 2000).

Here, in addition to finding that the vehicle was stolen and belonged to Rushing, the district court determined that Darden's behavior in his post-arrest interview—appearing extremely upset, "hemming and hawing," and not answering questions—evidenced a guilty mind. Officer Dimaso's testimony, which the district court specifically credited, provides even more support for Darden's intent. As soon as Officer Dimaso pulled Darden over, Darden jumped out of the car without any instruction from the officers. Darden did not have a valid driver's license. Darden also told officers that he borrowed the car from Eddie McDonald, after Darden overheard the police recruit (erroneously) identify McDonald as the car's owner. And Darden did not have contact information for the person he borrowed the car from, did not know where he lived, and did not know where he worked. Georgia courts have determined that all of these pieces of evidence support a finding of guilty intent. See Ridgeway v. State, 712 S.E.2d 84, 86 (Ga. Ct. App. 2011) (concluding evidence was sufficient when it showed in part a stolen dirt bike "had been borrowed from an alleged 'good friend' with an unknown last name who disappeared after [the defendant's] arrest"); In re C.S., 644 S.E.2d 894, 895 (Ga. Ct. App. 2007) (holding

that driving without a license or proof of insurance indicates knowledge that the car was stolen); Williams, 540 S.E.2d at 310 ("Contradictory statements by the defendant, coupled with the apparent nonexistence of the person from whom he contended he received the stolen property, authorize the jury to find that the defendant received the stolen property with knowledge that it had been stolen."); Daras v. State, 411 S.E.2d 367, 369 (Ga. Ct. App. 1991) (affirming sufficiency of the evidence of guilty intent based on registration and insurance papers in the name of the owner found in the stolen car and the defendant's testimony that he obtained the car from someone he knew but "not great").

Finally, Darden contends that the district court did not have sufficient evidence to find that he did not intend to restore the car to its owner. He claims the district court should have credited his statements in his post-arrest interview that he planned to return the car to McDonald but could not find him. But this argument and others Darden makes, like that Rushing and McDonald are the same person, are exactly what we cannot review here because "a trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review." United States v. Stanley, 739 F.3d 633, 653 (11th Cir. 2014) (internal quotation marks omitted). Darden claimed that McDonald told him to return the car on June 19. But he was stopped on June 21 still with the car reported stolen and there was no evidence that he was looking for McDonald or returning the car.

To be sure, even under clear error review, substantial evidence must support a district court's factual findings.  United States v. Robertson, 493 F.3d 1322, 1330 (11th Cir. 2007).  The district court here had enough evidence to rule that Darden did not intend to return the car.  While Rushing reported that the car had been stolen on June 14, Darden still had possession of it a week later.  Darden didn't know the name of the person he borrowed the car from, where he lived, or how to contact him.

The district court had sufficient evidence to find that Darden received stolen property in violation of Georgia law.  Given that Darden committed a grade B violation, the district court correctly calculated his guideline range.  See U.S.S.G. § 7B1.4(a).

**AFFIRMED.**