[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12518
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20112-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS MANUEL VASQUEZ ALVAREZ,
a.k.a. Angel Jose Santiago Rodriguez,
a.k.a. Eduardo Felix Perez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 22, 2021)

Before WILSON, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Jesus Manuel Vasquez Alvarez appeals his 60-month sentence for illegal reentry into the United States after having been deported.  He argues that his above-guideline sentence was substantively unreasonable because the district court gave undue weight to his prior criminal history.  After careful consideration, however, we discern no abuse of discretion by the district court.  Accordingly, we affirm Defendant's sentence.

## I.    BACKGROUND

Defendant is a native and citizen of the Dominican Republic.  After illegally entering the United States and then proceeding to commit felony offenses, Defendant was deported in August 2014.  But Defendant was not gone for long.  As a result of Defendant's arrest in Florida for drug trafficking and related offenses in 2018, immigration officials learned that Defendant had illegally entered the United States once again.  In a sworn post-*Miranda*[1] statement, Defendant admitted that he had illegally reentered the United States after being removed.  Accordingly, Defendant was charged with one count of illegal reentry after removal, in violation of 8 U.S.C. § 1326(a), (b)(2).  Defendant pled guilty without a plea agreement.

A probation officer then prepared a presentence investigation report ("PSR"), calculating a total offense level of 15 and a criminal history category of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

III, which calculations resulted in an advisory guideline range of 24 to 30 months' imprisonment, with a statutory maximum of 20 years. As relevant here, Defendant's total offense level included a six-level increase under U.S.S.G. § 2L1.2(b)(2)(6)—because, prior to being removed, Defendant had received a sentence exceeding one year and one month for a felony conviction—and a four-level increase under U.S.S.G. § 2L1.2(b)(3)(D)—because, after being removed, he had sustained another felony conviction. In scoring Defendant's criminal history, the probation officer assigned three points to a 2010 conviction, under U.S.S.G. § 4A1.1(a), and one point each for convictions Defendant sustained in 2012 and 2018, under U.S.S.G. § 4A1.1(c).

As to these prior convictions, Defendant was arrested in 2010 in Pennsylvania under the alias "Angel Rodriguez" and charged with one count of possession with intent to deliver heroin, one count of intent to possess a controlled substance by an unregistered person, and one count of using or possessing drug paraphernalia. Defendant pled guilty to the first count and the remaining counts were nolle prossed. Although he received a sentence of 11.5 to 23 months' imprisonment and 3 years' probation, he was released from jail only one month after his sentencing hearing,[2] and his probation was terminated 18 months later.

---

[2] Defendant had been in jail for 14 months prior to the sentencing hearing.

Defendant was next convicted in 2012 for unlawfully using a social security number to obtain a Pennsylvania driver's license. Defendant received one day in jail and three years' supervised release. But in 2014, after Defendant unlawfully left the state and associated with convicted felons, his probation was revoked and he was removed from the United States.

Finally, in 2018, Defendant was arrested in Florida under the alias "Eduardo Felix Perez" and convicted for conspiracy to traffic cocaine, conspiracy to commit money laundering, and attempted cocaine trafficking. The State dropped additional charges for cocaine trafficking, conspiring to traffic cocaine, and money laundering. Defendant received a sentence of only five years' probation for these offenses and, shortly thereafter, he was remanded to federal custody for the present offense.

At sentencing, Defendant confirmed that he had no objections to the PSR. Accordingly, the district court adopted the PSR's factual statements and advisory guideline calculation of 24–30 months' imprisonment. While the Government did not make a specific sentencing request, it asked the court not to vary downward and stated that it did not oppose a sentence at the bottom of the guideline range. Defense counsel, by contrast, asked for a six-month downward variance from the bottom of the guideline range to account for the time he had served while on an immigration hold after his arrest in 2018. Further, defense counsel noted that

4

Defendant would be deported after serving his sentence and that he would not return to the United States because he wanted to be with his three children in the Dominican Republic.

Noting the existence of "so many aggravating factors," the district court expressed surprise that Defendant would request a downward variance. The court explained that although it had sympathy for people who had come to the country to do honest work, Defendant was not one of those people, as he had declined to pursue legal work and had opted instead to commit drug crimes. The court further acknowledged that people who were illegally in the country might sometimes commit low-level offenses in order to be able to get to and from work, stating: "[T]he thing is, [if] you come here illegally, [and] if you're working and you're driving with a suspended license or a fake license and you get stopped, I can understand that. I really can, you know." But the court contrasted those types of offenses with the serious drug crimes Defendant had committed, which the court found inexcusable: "But you go and you traffic in cocaine or heroin and you get arrested, why shouldn't we give someone more time?"

In conclusion, the court stated that Defendant's convictions for cocaine and heroin trafficking, as well as his violations of supervised release, showed a serious disrespect for the law warranting a higher sentence in the present case. The court also noted that the extremely short sentences Defendant had received for his prior

convictions—which short sentences yielded a lower offense level than would have resulted had Defendant received longer sentences—appeared to have been the result of "very busy Philadelphia courts" and an "overwhelmed State court system." When defense counsel objected that the guidelines already accounted for Defendant's criminal history, the court disagreed, explaining: "The issue is, do they take them into account sufficiently?"

In rendering its ultimate sentence, the court explained that Defendant's criminal history revealed a need to impose a sentence that would protect the public and promote respect for the law. For that reason, the court upwardly varied from the 30 months called for by the upper end of the advisory guidelines range and imposed a sentence that was 2 1/2 years greater: that is, a 60-month sentence. After the court imposed sentence, defense counsel objected that the sentence was substantively unreasonable.

## II.    DISCUSSION

On appeal, Defendant argues that the 60-month prison sentence imposed by the district court was an unreasonable sentence. We review the substantive reasonableness of a sentence for an abuse of discretion in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors. *United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight,

6

(2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors" by, for example, "balanc[ing] them unreasonably." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted). "Even if we disagree with how the district court weighed the sentencing factors, we will only reverse a procedurally proper sentence if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Gomez*, 955 F.3d at 1257 (quotation marks omitted).

The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the advisory guideline range, pertinent policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a). "The district court must impose a sentence 'sufficient, but not greater than necessary to comply with the purposes' listed in § 3553(a)(2), such as the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct and protect the public from the defendant's future criminal conduct." *United States v. Nagel*, 835 F.3d 1371, 1376 (11th Cir. 2016) (quoting 18 U.S.C. § 3553(a)). The weight given to the § 3553(a) factors "is a matter committed to the sound discretion of the district

court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (quotation marks omitted).  Accordingly, "[w]e will not second-guess" a court's decision to give greater weight to certain factors rather than others "as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." *Gomez*, 955 F.3d at 1257 (quotation marks omitted).

As noted above, the district court's ultimate sentence represented an upward variance from the advisory guideline range.  Nonetheless, "[w]e do not presume that a sentence outside the guideline range is unreasonable and [we] must give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance."  *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020).  Accordingly, a court need not identify "extraordinary circumstances" to justify a sentence outside the guideline range, *United States v. Osorio-Moreno*, 814 F.3d 1282, 1287 (11th Cir. 2016), and "rigid mathematical formulas and proportionality tests cannot be used" to assess the reasonableness of a variance, *Irey*, 612 F.3d at 1186.  The sentencing court need only "give serious consideration to the extent of any departure from the guidelines" and "offer sufficient justifications for its conclusion that an unusually harsh or light sentence is appropriate."  *Osorio-Moreno*, 814 F.3d at 1287 (quotation marks omitted).

Here, we are not left with a "definite and firm conviction" that the district court acted unreasonably in concluding that a 60-month sentence of imprisonment

8

was necessary to protect the public and promote respect for the law. First, contrary to Defendant's argument, the court did not improperly "double count" his criminal history when it relied on that history both in calculating the guideline range and in imposing an upward variance.[3] True, in calculating Defendant's advisory guideline range, offense-level points were added because he had sustained felony convictions both before and after being removed from the United States, and criminal-history points were likewise awarded based on these prior convictions. *See* U.S.S.G. § 2L1.2(b)(2)(C) (six-level increase for felony convictions prior to first removal for which the sentence imposed exceeded one year and one month); *id.* § 2L1.2(b)(3)(D) (four-level increase for other felony convictions after removal); *id.* § 4A1.1(a) (three criminal-history points for prison sentences exceeding one year and one month); *id.* § 4A1.1(c) (one criminal-history point for other sentences not already counted).

Significantly, though, the degree of these enhancements does not account for the nature of the offenses that were the subject of the convictions. Instead, as the

---

[3] We note that Defendant does not raise a typical "double counting" issue, which arises when a district court counts the same aspect of a defendant's criminal history twice in calculating the advisory guideline range. *See United States v. Dudley*, 463 F.3d 1221, 1226–27 (11th Cir. 2006) ("Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." (quotation marks omitted)). Rather, Defendant contends that, because his prior convictions had been used to calculate the guideline range, the court acted unreasonably in varying upward from the guideline range based on the nature of the convictions at issue.

Commission has acknowledged, these enhancements gauge the prior offense's seriousness solely on the length of the sentence imposed for these offenses. Specifically, although U.S.S.G. § 2L1.2 previously awarded offense-level points "based on the nature of a defendant's [prior] conviction," the Sentencing Commission found that the guideline was too difficult to administer. U.S.S.G. Supp. to App. C, at 155 (Nov. 1, 2016) (reproducing Amendment 802). Accordingly, it amended § 2L1.2, eliminating the need to assess the nature of prior convictions by adopting "a much simpler sentence-imposed model" that "determined [the level of sentencing enhancement] by the length of the sentence imposed for the prior offense, not by the type of offense for which the defendant had been convicted." *Id.* Similarly, the Sentencing Commission sought to "minimize problems with imperfect measures of past crime seriousness" in calculating criminal-history points under U.S.S.G. § 4A1.1 by ensuring that "criminal history categories are based on the maximum term imposed in previous sentences rather than on other measures, such as whether the conviction was designated a felony or misdemeanor." U.S.S.G. § 4A1.1, comment (backg'd.).

The Sentencing Commission based U.S.S.G. § 2L1.2(b)(2)'s "sentence-length benchmarks" on its "data analysis of offenders' prior felony convictions [which] showed that the more serious types of offenses, such as drug-trafficking offenses, . . . tended to receive sentences of imprisonment of two years or more."

10

U.S.S.G. Supp. to App. C, at 157 (Nov. 1, 2016) (reproducing Amendment 802). And the Commission commented that its length-of-sentence approach to § 2L1.2, which assumed that "the length of sentence imposed by a sentencing court is a strong indicator of the court's assessment of the seriousness of the predicate offense," was "consistent with how criminal history is generally scored in . . . Chapter Four." *Id.* In short, the length of the sentence acts as a proxy for the seriousness of the underlying offense.

In varying upward, the district court concluded that, in the particular case before it, the very short sentences for Defendant's drug trafficking convictions—less than two years for heroin trafficking and only probation for cocaine trafficking—were not an accurate indicator of the seriousness of Defendant's prior offenses. Instead, the court noted, these sentences appeared to be the result of "very busy" and "overwhelmed" state court systems, rather than fair measures of the seriousness of the past criminal conduct.

In essence, Defendant is arguing that, in arriving at a reasonable sentence, a district court cannot consider the seriousness of the defendant's prior convictions. Yet, nothing in the § 3553(a) factors forbids such an assessment. Indeed, the guidance provided in § 3553(a)(2) calls for a sentence that reflects the need to deter criminal conduct and protect the public from future criminal conduct. *Nagel*, 835 F.3d at 1376; *see Osorio-Moreno*, 814 F.3d at 1286, 1288 (holding that an

11

upward variance from a 51-to-63-month guideline range to the statutory maximum of 120 months was substantively reasonable in a sentence for illegal reentry where the court found that the defendant was a danger to the public based on his extensive criminal history); *see also United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008) (holding that, in assessing the defendant's history and characteristics, the district court reasonably emphasized his prior fraud-related crimes as an aggravating factor, even though his prior offenses had been relied upon in calculating the guideline range).

Other aggravating factors not reflected in the guidelines' calculation also existed.[4] Showing further disregard for the law, Defendant had violated the supervised release imposed for his 2012 federal conviction by leaving his state of residence and associating with other convicted felons. In addition, when police arrested Defendant for attempted cocaine trafficking in 2018, he used an alias, suggesting an effort to avoid detection of his true identity and thereby escape the full consequences of his criminal conduct.

---

[4] Given the PSR's unobjected-to factual description of the conduct underlying Defendant's 2010 arrest for criminal conspiracy to engage in aggravated assault, kidnapping for ransom, and terroristic threats with intent to terrorize another, the Government argues that this conduct should also be considered in evaluating the reasonableness of the district court's sentence—even though a jury acquitted Defendant of these charges. The record, however, indicates that the district court did not base its sentencing decision on this arrest, or the underlying charged conduct. We therefore do not consider the Government's argument in reaching our determination that the district court's sentence was not unreasonable.

"[T]here is no exact calculus to identify what is a reasonable sentence," *United States v. Owens*, 464 F.3d 1252, 1256 (11th Cir. 2006), and our deferential standard of review "allows a range of choice for the district court," *Irey*, 612 F.3d at 1189 (quotation marks omitted). Bearing in mind that a district court's sentence "need only be a reasonable one"—not "the most appropriate one"—we cannot say that the district court's sentence "lies outside the range of reasonable sentences dictated by the facts of the case." *Gomez*, 955 F.3d at 1257 (quotation marks omitted).

## III.   CONCLUSION

Because Defendant has not shown that his 60-month sentence was substantively unreasonable, we affirm.

**AFFIRMED.**