[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————

No. 23-11404

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ZABARE ROYAL,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:09-cr-00337-MLB-ECS-1

————————————

Before WILSON, LUCK, and ED CARNES, Circuit Judges.

PER CURIAM:

Zabare Royal appeals his 22-month sentence imposed upon revocation of his supervised release.  Royal contends that his sentence, which was an upward variance from the guidelines range of 12 to 18 months, is substantively unreasonable.  We disagree and affirm.

## I.

In 2010 Royal pleaded guilty to carjacking, conspiracy to commit three carjackings, and using and carrying a firearm during a crime of violence.  During the investigation into the carjackings, Royal admitted to police that his crimes were part of a gang initiation.  The district court sentenced Royal to 149 months imprisonment followed by five years of supervised release.  His supervised release was subject to several conditions, including that he: (1) not commit another crime; (2) not purchase, possess, or use a controlled substance; (3) submit to drug testing; and (4) participate in a drug and alcohol treatment program and a mental health treatment program.

Royal began serving his term of supervised release in August 2021.  Just three months into it, his probation officer filed a violation report and petition for summons against Royal.  The report alleged that between August and November Royal tested positive for marijuana on four occasions, tested positive for both marijuana and cocaine on two other occasions, failed to report to drug testing,

failed to stay at his approved residence, failed to contact his probation officer upon return to his residence, and failed to follow the rules provided by treatment staff at his residence, the last of which ultimately led to his discharge from the facility.

In March 2022, before the court had held a revocation hearing on the initial violation report, Royal's probation officer filed an amended report alleging that Royal had committed additional violations of his supervised release. The report alleged that Royal had failed to report for two mental health and drug treatment sessions (which led to his discharge from the counseling program) and had failed to submit to three random drug tests.

The court held Royal's revocation hearing the following week, and Royal admitted to all of the violations. The court deferred adjudication until September and ordered Royal to continue to abide by the conditions of his supervised release until then. Despite that instruction, Royal's probation officer filed a second amended violation report in July alleging that Royal committed the following new violations: he tested positive for marijuana twice, he tested positive for both marijuana and cocaine once, he failed to submit to three other random drug tests, and he was discharged again from the mental health and drug treatment program (after having been allowed to re-enroll) due to "lack of commitment to the program, and failure to communicate, schedule, and attend evaluations and sessions."

At his hearing in September, Royal admitted to the new allegations. The government requested a period of confinement,

and both the probation office and defense counsel recommended that Royal be sentenced to six months in prison. Despite those recommendations, the court wanted "to give Mr. Royal another chance." It recognized that the number of Royal's supervised release violations had recently decreased and that despite failing a few drug tests, Royal had also passed many of them. The court explained that it was reluctant to impose a term of imprisonment "until nothing else works." For that reason, the court declined to revoke Royal's supervised release and instead tried to make supervision "easier" on Royal by removing the requirements that he participate in a drug and alcohol treatment program and a mental health treatment program.

In January 2023 probation issued a new violation report alleging that Royal had committed two more violations of his supervised release. First, the report alleged that Royal had been arrested on January 5 for burglary in the second degree, possession of tools in commission of a crime, and felony theft by taking. According to the report, police had responded to a silent alarm at a Saks Fifth Avenue and learned from the onsite security guard that Royal had been seen on surveillance cameras inside the store wearing all black and taking items and putting them in a suitcase. After entering the store and detaining Royal, the officers recovered over $22,000 in high-end merchandise from him. They also found a wire cutter, hammer, and screwdriver in a bookbag that Royal had with him.

In addition to those new criminal charges, the violation report alleged that Royal had again tested positive for marijuana and cocaine.

At the revocation hearing for the latest violation report, Royal admitted to the allegations.  The court accepted Royal's admissions and found that he had committed those violations of his supervised release.  It found that Royal's most serious violation was "Grade B," and his criminal history category was IV.[1]  Accordingly, the recommended sentence range under the guidelines was 12 to 18 months imprisonment, with a statutory maximum of 60 months.

The government and Royal both recommended 18 months imprisonment with no supervised release to follow.  In making its recommendation the government expressed concern that Royal's cocaine use would increase his risk for recidivism.  Royal's counsel recognized the seriousness of Royal's charges but believed that an 18-month sentence would adequately protect the public and satisfy deterrence, especially considering that the State planned to indict and prosecute Royal for the burglary.

---

[1] A "Grade B" supervised release violation is conduct that is a federal, state, or local offense punishable by a term of imprisonment exceeding one year but not more than twenty years, and that is not a crime of violence, a controlled substance offense, or a crime involving possession of a firearm or certain other destructive devices.  *See* United States Sentencing Guidelines § 7B1.1(a) (Nov. 2021).

Both parties acknowledged Royal's difficult background and circumstances. The government admitted that in the past it had felt a "soft spot" for Royal because he had been taken away from his mother at a young age, had aged out of the foster care system, and was vulnerable to gang recruitment. Royal's counsel explained that Royal had faced a difficult situation being released from prison and struggling with substance abuse and mental health issues without family support. She noted that he had been able to get his GED during his original prison sentence, so he would now be able to participate in vocational training.

The court initially sentenced Royal to 24 months imprisonment with no supervised release. In rejecting the parties' 18-month recommendation, the court stated that it considered all the applicable § 3553(a) factors and that the above-guidelines sentence was necessary for deterrence and to protect the public. The court acknowledged the parties' arguments about Royal's difficult background but determined that Royal's "nature and circumstances do not weigh in his favor." Specifically, it detailed Royal's history of supervised release violations and his pattern of committing new violations before the court could address existing ones. The court explained:

> I have done about everything that I can for Mr. Royal from the very start. I have given him about every benefit of the doubt that we can.
>
> . . .

I stretched at that [September 2022] hearing to give Mr. Royal another chance, despite what you-all wanted me to do. . . . I tried to cut down the difficulty of supervised release to the bare bone to make it as easy as possible.  And what does Mr. Royal do but go and sneak into Saks at 1:30 in the morning and try to steal $20,000 worth of merchandise.

. . .

I think there's nothing else that can be done for Mr. Royal.  I've given him absolutely every possible chance that I possibly can, because he's young.  I saw the crime he was involved in before.  And I think he's on the way right back there.

. . .

I know you-all asked me for 18 months, which is the top of the recommended guideline, but the guidelines are just that, they are recommendations.  I think it is more serious than that.  I think additional time is needed in order to further deter, primarily for further deterrence and further protection for the public.

Royal's counsel objected to the 24-month sentence on both procedural and substantive grounds and pointed out that Royal had not been given the opportunity to allocute.  The court apologized and allowed Royal to speak.  Royal agreed that the court had given him "plenty of chances," and he took responsibility for his actions. He also explained the financial stress that led to the Saks burglary. After Royal's allocation the court sentenced him to 22 months,

adding: "I still think 24 is right, but I messed up, got it out of order and I don't want you to think I'm just sticking with what I said before." Royal maintained his objection to the substantive reasonableness of the sentence.

## II.

A district court may, after considering most of the factors set forth in 18 U.S.C. § 3553(a), revoke a term of supervised release and require a defendant to serve in prison all or part of the term of supervised release authorized by statute for the underlying offense that resulted in the term of supervised release. 18 U.S.C. § 3583(e)(3). The relevant § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence to criminal conduct; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentence and the sentencing range under the guidelines; (6) any pertinent policy statement issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities; and (8) the need to provide restitution to any victims. *Id.* § 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7).[2]

---

[2] Absent from the list of relevant factors in § 3583(e) is § 3553(a)(2)(A), which provides that a district court must consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law,

The Sentencing Guidelines provide that a sentence imposed upon revocation should sanction primarily the defendant's "breach of trust" for failing to abide by the conditions of the court-ordered supervision, while also accounting for, "to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." United States Sentencing Guidelines § 7A, intro. cmt. 3(b) (Nov. 2021). The guidelines explain that the Sentencing Commission chose not to sanction violators for the conduct of the revocation as if that conduct were being sentenced as new federal criminal conduct because "the court with jurisdiction over the criminal conduct leading to revocation is the more appropriate body to impose punishment for that new criminal conduct" and "as a breach of trust inherent in the conditions of supervision, the sanction for the violation of trust should be in addition, or consecutive, to any sentence imposed for the new conduct." *Id.* That approach is also intended to avoid any duplicate sanctioning. *Id.*

We review the substantive reasonableness of a sentence imposed upon revocation of supervised release for abuse of discretion, considering the totality of the circumstances. *See United States v. Trailer*, 827 F.3d 933, 935–36 (11th Cir. 2016); *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). Royal bears the burden of establishing that his sentence is unreasonable in light of the record and the § 3553(a) sentencing factors. *See Trailer*, 827 F.3d at

and to provide just punishment for the offense." 18 U.S.C. §§ 3553(a)(2)(A), 3583(e).

936; *Tome*, 611 F.3d at 1378; *United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020).

"A district court must impose a sentence that is 'sufficient, but not greater than necessary,' to achieve the purposes of Section 3553(a)." *Gomez*, 955 F.3d at 1257 (quoting 18 U.S.C. § 3553(a)). We've previously explained that a district court abuses its discretion when it: "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors" by balancing them unreasonably. *Id.* (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)). But the court does not have to give all the § 3553(a) factors equal weight and has discretion to attach great weight to one factor over another. *See id.*; *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Even if we disagree with how the district court weighed the relevant sentencing factors, we will vacate the defendant's sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Trailer*, 827 F.3d at 936 (quoting *Irey*, 612 F.3d at 1190).

The district court has broad discretion to decide whether the § 3553(a) factors justify a variance from the guidelines range, and if so, the extent of one that is appropriate. *See United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *abrogated on other grounds*

by *Van Buren v. United States*, 141 S. Ct. 1648 (2021); *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). If a district court determines that a variance from the guidelines range is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Tome*, 611 F.3d at 1378 (quotation marks omitted). When reviewing for substantive reasonableness "[w]e may take the degree of variance into account, but we do not presume that a sentence outside the guidelines range is unreasonable and we must give due deference to the district court's decision that the § 3553(a) factors support its chosen sentence." *United States v. Oudomsine*, 57 F.4th 1262, 1267 (11th Cir. 2023); *see Irey*, 612 F.3d at 1186–87; *Tome*, 611 F.3d at 1378; *Rosales-Bruno*, 789 F.3d at 1254–55. A sentence that is well below the statutory maximum for the crime is an indicator of a reasonable sentence. *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

Royal contends that his 22-month sentence was greater than necessary to achieve the purposes of sentencing under § 3553(a). He argues that the court's primary reasons for the four-month upward variance — the need for deterrence and to protect the public — are not compelling enough to justify the variance because there is a lack of data showing that increased sentences also increase deterrence, and because he does not pose a threat to anyone's physical safety.

The district court did not abuse its "considerable discretion" to decide whether the § 3553(a) factors justify an upward variance.

*Shaw*, 560 F.3d at 1238 (quotation marks omitted). We are satisfied that the court's stated reasons for the four-month variance were sufficiently compelling to support the degree of the variance. *See id.* at 1240–41; *Tome*, 611 F.3d at 1378–79. The court emphasized that deterrence and protection were needed in light of Royal's Saks Fifth Avenue burglary and his repeated violations of his supervised release terms, despite having been given multiple opportunities to show improvement. Under the totality of the circumstances, we cannot say the court's decision to impose a 22-month sentence, which was well below the 60-month statutory maximum, was an abuse of discretion.

Royal also contends that the district court improperly weighed the § 3553(a) sentencing factors by giving too much weight to the deterrence and public protection factors and by failing to seriously consider his personal growth. But while the court was required to consider all of the applicable sentencing factors, the weight accorded to each factor "is a matter committed to [its] sound discretion." *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1272 (11th Cir. 2014) (quotation marks omitted); *see also Rosales-Bruno*, 789 F.3d at 1254. The court adequately considered Royal's history and characteristics, weighing his background and personal growth against his multiple supervised release violations and breaches of the court's trust. Royal disagrees with the court's decision to count that factor against him and give more weight to other § 3553(a) factors, but he has not shown that the court's sentence was outside the range of reasonableness. *See Irey*, 612 F.3d at 1190–91. Nor has he shown that the court otherwise failed to

consider a relevant factor or gave significant weight to an irrelevant factor. *See id*. at 1189. As such, we will not substitute our judgment for the district court's and reweigh the sentencing factors. *See Oudomsine*, 57 F.4th at 1267; *Ramirez-Gonzalez*, 755 F.3d at 1273.[3]

Based on the record, Royal has not met his burden of establishing that his sentence was substantively unreasonable.

**AFFIRMED.**

---

[3] Royal contends that the court's decision to reduce his sentence from 24 months to 22 months, without any reference to the § 3553(a) sentencing factors, indicates that the sentence was arbitrarily imposed. If anything, the court's decision to reduce the sentence after Royal's allocution shows that the court credited Royal's history, characteristics, and personal growth.