[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14447
_____

D.C. Docket No. 1:14-cr-20404-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO LENIN OSORIO-MORENO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 1, 2016)

Before WILLIAM PRYOR and DUBINA, Circuit Judges, and ROBRENO,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

This appeal requires us to decide whether a sentence above the guideline range for an offender with 20 prior convictions—ranging from drug trafficking to offenses related to firearms and prostitution to violent crimes against women and police officers—is substantively reasonable. Ricardo Osorio-Moreno pleaded guilty to illegal reentry after deportation, 8 U.S.C. § 1326(b)(1). His final offense level, after a 3-level reduction for acceptance of responsibility, was 17, and his criminal history category was VI, which produced a guideline range of 51 to 63 months of imprisonment. The district court determined that a sentence within the guideline range would not adequately reflect Osorio's criminal history and would not provide adequate deterrence or promote sufficient respect for the law. The district court sentenced Osorio to 120 months of imprisonment and three years of supervised release—the statutory maximum. Because this sentence is substantively reasonable, we affirm.

## I. BACKGROUND

Osorio, a citizen of Nicaragua, pleaded guilty to illegally reentering the United States after deportation, *id.* § 1326(b)(1). At sentencing, the district court recounted Osorio's life of crime from the presentence investigation report. Osorio's run-ins with the law began at age 15. As a juvenile, he was arrested for "grand theft, burglary, criminal mischief, strong armed robbery, resisting an officer

2

without violence, another strong armed robbery . . ., cannabis possession, another strong armed robbery . . . [and] open alcohol container in the vehicle."

Osorio's adult convictions began at age 18, when he was charged with disorderly intoxication and unlawful assembly. He received no criminal-history points because adjudication was withheld. At 19, he was convicted of purchasing and possessing cocaine and cannabis. He received two days, with credit for time served, and one point. At 20, he was convicted of unlawful sale and delivery of cannabis, possessing cocaine, possessing cannabis, and resisting an officer without violence. He received 33 days in jail and one point.

Osorio was then deported, but he returned illegally and began committing violent crimes. At 23, he was convicted of strong-arm robbery, aggravated assault on a police officer, and resisting an officer with violence. He received 24 months of imprisonment and four points for those convictions. "[T]he victim was walking down the street when the defendant approached her and said, Ma'am, do not move. I do not want to hurt you. Give me your chain." When officers came to arrest Osorio for robbing the woman, he assaulted them. The district court read the disturbing narrative of the aggravated assault:

> [A] police officer was conducting a robbery investigation and the defendant exited a residence and started yelling profanities. The officer told him to calm down and not interfere with his duties. The defendant walked back into the residence and came out with a blunt object in his hand. He told the officer, Get the fuck out of my property. If not, I'm going to start hitting you until you die. He then

3

ran back into the residence. Hours later, the defendant was removed from the residence by a special weapons and tactics team and arrested.

Osorio continued to amass convictions for serious offenses throughout his twenties. At 25, Osorio was convicted of carrying a concealed weapon. He was fined and received one point. At 26, he was convicted of cocaine possession. He received 30 days in jail and one point. At 27, he was convicted of resisting and obstructing a police officer. He received one day in jail, with credit for time served, and no points. At 29, he was convicted of cocaine possession and resisting an officer without violence. He received 21 days, with credit for time served, and one point.

Osorio's life of crime continued in his thirties. At 30, he was charged with directing another to prostitution. Adjudication was withheld, and he was given six months in the advocate program. He received no points. Osorio "asked an undercover police officer if he wanted a date with the codefendant" and "told the undercover officer that the charge was $20 for a blow job plus his $5." At 31, Osorio was convicted of tampering with physical evidence. He received 75 days in jail and two points. At age 32, he was convicted of disorderly intoxication. He was fined and received no points. Also at age 32, he was convicted of criminal mischief and assault. He received 42 days, with credit for time served, a suspended sentence, and one point. In that incident, Osorio's sister called the police after an argument about a car. Osorio told her, "I'm going to kill you if you do not give me

4

the car." She "refused and [Osorio] smashed the car window with a baseball bat and slashed a tire." Also at age 32, he was convicted of fleeing and eluding a police officer. He received 120 days in jail and two points. At 33, he was convicted of disorderly intoxication. He received one day in jail, with credit for time served, and no points. A few months later he was convicted of battery for grabbing a woman by the neck. He received two days in jail, with credit for time served, and one point. Also at age 33, he was arrested for possession of cannabis. Adjudication was withheld and he received one point. Later that year he was convicted of battery on a law enforcement officer and resisting an officer with violence. He received two years of probation, which was modified to 180 days in jail, and two points. While handcuffed in the back of a police car, Osorio "began to kick the rear window of the patrol car. When the officer stopped and opened the door, the defendant kicked him twice and attempted to flee. As backup officers arrived, [Osorio] was restrained" Osorio told the officers, "As soon as you take the cuffs off, I'm going to take your gun and shoot you." At 35, he was convicted of littering. He was fined and received no points. Also at 35, he was convicted of giving a false name and identification after arrest and corruption by a threat against a public servant. He received 90 days in jail and two points. The district court found the arrest affidavit especially troubling:

> [T]he defendant was stopped for running a red light and driving with an expired tag. When confronted by a police officer, the defendant

5

gave a false date of birth and name in order for the officer not to find out he was on probation. Furthermore, while in the back of the patrol car, the defendant stated, quote, If you don't let me out of the car, when I bond out, I am going to kill you and your bitch ass nigger wife. He further stated that he was a gang banger and he had many guns, and when he bonded out he was coming after the officer and his family.

The district court also reviewed Osorio's history of arrests for other adult criminal conduct that the state chose not to prosecute. These arrests included charges of "obstruction of a police officer, robbery[/]carjacking, criminal mischief, strong armed robbery at age 28, cocaine possession at 30, burglary of an unoccupied conveyance, [and] possession of burglary tools." The district court stated that Osorio's arrest for aggravated assault with a deadly weapon was especially heinous. In that incident, Osorio's aunt "told police the defendant took her vehicle and returned intoxicated. They had a verbal altercation until the defendant grabbed a kitchen knife and stated, quote, I am going to kill you, bitch." Osorio was also arrested for carrying a concealed weapon, illegally possessing a weapon, and battery. And Osorio had a pending charge for improper exhibition of a firearm. The victim "told police that when she left her house, she closed her bedroom door. Upon returning, the bedroom door was open and $400 was missing. When she questioned [Osorio], he pulled out a handgun and stated, I am not giving you shit. You better leave." When the police arrived, Osorio said, "You guys are here too late. You won't find the gun."

6

Osorio had a base offense level of 8, United States Sentencing Guidelines Manual § 2L1.2(a) (Nov. 2013), and a 12-level enhancement for a felony drug-trafficking offense, *id.* § 2L1.2(b)(1)(B). He received a 2-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), and an additional 1-level reduction on the government's motion, *id.* § 3E1.1(b). He had 16 criminal-history points, placing him in criminal-history category VI. His guideline range was 51–63 months of imprisonment.

Osorio asked for a downward departure. First, he argued that the conviction that gave rise to the 12-level enhancement should not count towards his criminal history category, but the district court responded that Osorio would still be criminal history category VI without that offense. Osorio also asked for a downward variance because he believed the guideline range overstated his culpability. He argued that his arrests "are the product of a person who for years has been a chronic abuser and addict of alcohol and drugs, particularly crack cocaine. . . . He got hooked on drugs because, from an age as young as 12, his step-father would send him out to purchase and retrieve drugs for him." Osorio also alleged that he witnessed his stepfather murder a man. Osorio added that he cooperated with the prosecutors and "gave them truthful information about drug trafficking activity . . . and the presence of a person who is illegally in the United States." The government argued that although he later cooperated, Osorio "at first claimed to be a United

States citizen, claiming he was born in the United States, and it was up to ICE agents to contact the defendant's mother to confirm that he wasn't a United States citizen and wasn't born in the United States."

The district court sentenced Osorio to the statutory maximum of 120 months of imprisonment and three years of supervised release. The district court determined that this sentence was appropriate under the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), because "the guideline sentence does not accurately or adequately reflect the defendant's history and underrepresents the seriousness of his criminal history." In addition, the district court determined that "the guideline sentence does not reflect adequately the need to promote respect for law given the defendant's numerous criminal violations, his disrespect for law enforcement, [and] his use of violence towards women and towards law enforcement." And it determined that "the guideline sentence does not provide adequate assurance that it would deter this defendant or others from engaging in similar behavior upon release from incarceration."

## II. STANDARD OF REVIEW

We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (en banc). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an

improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.* at 1189 (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)). Under our deferential standard of review, "we are to vacate the sentence if, but only if, we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Id.* at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

### III. DISCUSSION

Osorio argues that his sentence is substantively unreasonable for two reasons. First, he argues that the upward variance from his guideline range was not supported by extraordinary circumstances. Second, he argues that the district court gave too much weight to his criminal history and not enough weight to his troubled upbringing. We address both arguments in turn.

Osorio argues that his sentence is unreasonable because the variance from the guideline range was not supported by extraordinary circumstances, but the Supreme Court has rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 47 (2007). That approach "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the

9

Guidelines range." *Id.*; *see also Irey*, 612 F.3d at 1186. The sentencing court instead "must give 'serious consideration' to the extent of any departure from the guidelines, and must offer 'sufficient justifications' for its conclusion that an unusually harsh or light sentence is appropriate." *Irey*, 612 F.3d at 1186 (quoting *Gall*, 552 U.S. at 46).

Osorio argues that the district court gave too much aggravating weight to his criminal history and not enough mitigating weight to his troubled youth. Osorio argues that he is a drug addict and petty criminal. He contends that his problems with drugs began at age 12 when his stepfather sent him to buy drugs and worsened after he witnessed his stepfather kill a man. He promises to remain in Nicaragua indefinitely following deportation.

The district court did not abuse its discretion in weighing Osorio's substantial criminal history more heavily than the advisory guideline range or his addiction and past traumas. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1262–63 (11th Cir. 2015). The district court also reasonably discounted Osorio's promise to remain in Nicaragua. After all, Osorio illegally reentered the United States and was convicted of 17 more crimes following his first deportation. And the district court reasonably concluded that Osorio's guideline range understated his criminal history. Six of Osorio's 20 convictions did not result in any criminal-history points, four of his points were not counted, *see* U.S.S.G. § 4A1.1(c), and he

was *still* well above the 13-point threshold for criminal-history category VI, the highest category. Osorio also had 15 instances of criminal conduct that were not counted, including arrests for grand theft of a vehicle, burglary, aggravated assault with a deadly weapon, and robbery.

We have upheld large upward deviations based solely on an offender's extensive criminal history. In *United States v. Shaw*, 560 F.3d 1230 (11th Cir. 2009), we upheld a statutory-maximum sentence of 120 months despite a guideline range of 30–37 months. Shaw had 26 prior arrests and we upheld his above-guideline sentence based solely on his "unwavering desire to commit crimes." *Id.* at 1241. And in *United States v. Sanchez*, 586 F.3d 918 (11th Cir. 2009), we held that "the district court did not abuse its discretion when it determined that Sanchez's criminal history was sufficiently compelling to justify not only an upward departure that increased the guidelines range, but also an upward variance above that guidelines range." *Id.* at 936.

The district court reasonably concluded that Osorio's sentence was necessary to achieve the goals of sentencing, *see* 18 U.S.C. § 3553(a). Osorio has engaged in a life of crime, with a staggering 20 convictions, and the district court reasonably concluded that Osorio's guideline range understated his criminal history. Osorio's repeated acts of violence against women and law-enforcement officers and his return trips to jail also support the conclusion that a lengthy

sentence was necessary to promote deterrence and respect for the law. In the light of Osorio's extensive criminal history, his sentence is substantively reasonable.

## IV. CONCLUSION

We **AFFIRM** Osorio's sentence.