[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14247
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00530-VMC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL ARROYO,
a.k.a. King Tweet,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 18, 2017)

Before WILLIAM PRYOR, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

This is the second occasion that Daniel Arroyo has appealed his sentence for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). We affirmed the enhancement of Arroyo's sentence under the Armed Career Criminal Act, *United States v. Arroyo*, 562 F. App'x 889 (11th Cir. 2015), but after the Supreme Court vacated our judgment and remanded for reconsideration in the light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), we vacated Arroyo's sentence and remanded for resentencing. On remand, the district court varied upward from the guideline range and sentenced Arroyo to the statutory maximum penalty of 120 months of imprisonment. Arroyo argues that his sentence is unreasonable. Because the district court did not abuse its discretion, we affirm.

## I. BACKGROUND

Arroyo's criminal history spans almost two decades. On February 23, 1994, he fired a gun from inside a vehicle that was within 1,000 feet of a person, and four days later, he forcibly stole a car from a person and went to a McDonald's restaurant, where he thrice shot another person at close range. In 2007, while Arroyo was serving his sentences for discharging a firearm, criminal mischief, robbery, attempted murder, and aggravated battery, he punched a prison officer in the face and attempted to wrap the chain of his handcuffs around the officer's neck. In 2008, when Arroyo's charge of battering a law enforcement officer was pending, he was arrested carrying a concealed weapon. In 2011, shortly after

2

Arroyo was released from prison, he was charged for grand theft of a semiautomatic firearm, carrying a concealed weapon, loitering, and domestic violence for battering his girlfriend in the face and upper body. Although the state court dismissed the charges against him, Arroyo's theft of the semiautomatic handgun led to his present conviction for being a felon in possession of a firearm.

Arroyo's mayhem continued while he was awaiting resentencing. Arroyo's presentence investigation report stated that Arroyo "had numerous disciplinary infractions." His misdeeds included refusing to obey orders, "breaking a showerhead in his cell," "being involved in a large-scale fight in the housing unit involving weapons and refusing to stop," threatening "to kill a staff member, "cursing and threatening [a] staff chaplain," and cursing at prison staff.

Arroyo's revised presentence report provided a total offense level of 23 that, with a criminal history of IV, resulted in an advisory sentencing range of 70 to 87 months of imprisonment. Arroyo objected to the calculation of his sentence, and the district court decreased his base offense level to 20, *see* United States Sentencing Guidelines Manual § 2K2.1(a)(4)(A) (Nov. 2012), which after adding two levels for stealing the firearm he possessed, *id.* § 2K2.1(b)(4)(A), and subtracting three levels for his acceptance of responsibility, *id.* § 3E1.1, resulted in a total offense level of 19. Based on Arroyo's criminal history, the district court calculated a revised sentencing range of 46 to 57 months of imprisonment.

The district court continued Arroyo's sentencing hearing for him to gather evidence to respond to the request of the government (and of Arroyo's former girlfriend) to vary upward and sentence Arroyo to the statutory maximum penalty of 120 months. When the hearing resumed, Arroyo presented testimony from Dr. Valerie McClain, a licensed psychologist, that Arroyo had a brain impairment due to oxygen deprivation at birth and a head injury from a car accident when he was four years old. Dr. McClain opined that Arroyo knew the difference between right and wrong, but "he was more vulnerable to hooking up with the wrong peer group" and was not "able to process things through, rationally looking at potential consequences." Dr. McClain described Arroyo as being "psychiatrically impaired with [a] schizoaffective disorder," which resulted in a failure to respect and trust people, including authority figures, and required treatment with medication, "behavior management, [and a] structured  type of intervention," for him to avoid reoffending. Dr. McClain recommended a "balance between punishment and rehabilitation" to "stabiliz[e] Arroyo on medication, . . . help[] him to understand his mental illness . . . and be able to concentrate and focus on positive movements toward . . . re-entry" and to provide education, job training, and counseling, and anger management and substance abuse classes. At the end of the hearing, Arroyo requested a sentence of 84 months of imprisonment.

The district court sentenced Arroyo to 120 months of imprisonment. That decision, the district court explained, "really . . . [required] think[ing]" and was not made "lightly." The district court stated that Dr. McClain's testimony was "very helpful" and provided "additional insight." The district court found troubling Arroyo's abuse of his girlfriend and his "numerous interactions with the criminal justice system," particularly because his "violations [were] of a dangerous and violent nature." Arroyo's "violent criminal history and continued violence while incarcerated," the district court explained, "demonstate[d] a need to protect the community from future crimes from [Arroyo] and justifie[d] a sentence at the statutory maximum."

## II. STANDARD OF REVIEW

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). When the sentence imposed is "outside the Guidelines range, [we] may not apply a presumption of unreasonableness. [We] may consider the extent of the deviation, but must give due deference to the district court's decision that the [statutory sentencing] factors, on a whole, justify the extent of the variance." *Id.*; *see United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir.), *cert. denied*, 137 S. Ct. 254 (2016). That we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

5

## III. DISCUSSION

Arroyo argues that his sentence is procedurally and substantively unreasonable. He contends the district court committed procedural error by failing to "afford []sufficient weight to [his] intellectual and mental health deficits." Arroyo also argues that his sentence is substantively unreasonable because the district court "afforded undue weight to an alleged domestic violence charge" that was dismissed and to Arroyo's criminal history and prison disciplinary record. These arguments fail.

No procedural error occurred. Procedural error occurs when the district court fails to comply with the rules that govern sentencing, "such as [by] failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [statutory sentencing] factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. But Arroyo does not fault the district court for failing to consider a sentencing factor or relying on an impermissible factor. Arroyo takes issue with the weight assigned to particular sentencing factors, which falls under the ambit of substantive reasonableness. *See United States v. Irey*, 612 F.3d 1160, 1194 (11th Cir. 2010) (en banc).

6

The district court did not "commit[] a clear error of judgment in weighing" the sentencing factors. *See id.* at 1190. To determine an appropriate sentence, the district court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public, and provide the defendant with needed training, medical care, or treatment. 18 U.S.C. § 3553(a). The district court took into account Arroyo's mental impairments and found "helpful" his expert witness's recommendation to incarcerate Arroyo and that he receive medical treatment and mental and vocational counseling. And the district court reasonably attached great weight to Arroyo's violent criminal history, which "fits squarely into one of the § 3553(a) factors, the history and characteristics of the offender," *United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008), and the need to protect the public from future similar crimes. *Gall*, 552 U.S. at 56–57 (holding that a district court did not abuse its discretion because it "attached great weight" to one factor). "[T]he weight accorded to any of the § 3553(a) factors is committed to the sound discretion of the district court," *United States v. Dougherty*, 754 F.3d 1353, 1361 (11th Cir. 2014), which did not assign undue weight to any particular sentencing factor.

7

Arroyo argues that a sentence 63 months above the high end of his advisory sentencing range of 46 to 57 months is unreasonable, but we have affirmed equally large upward variances based on a defendant's violent criminal history. In *United States v. Shaw*, 560 F.3d 1230 (11th Cir. 2009), we upheld the decision to vary upward from the defendant's sentencing range of 30 to 37 months to his maximum statutory sentence of 120 months because his 26 prior offenses revealed an "unwavering desire to commit crimes." *Id.* at 1241. And in *United States v. Osorio-Moreno*, 814 F.3d 1282 (11th Cir. 2016), we upheld an upward variance from a sentencing range of 51 to 63 months to the defendant's maximum penalty of 120 months when the defendant had "engaged in a life of crime, with a staggering 20 convictions," and he had committed "repeated acts of violence against women and law-enforcement officers." *Id.* at 1288.

Arroyo's sentence of 120 months is reasonable. He amassed convictions for robbery, attempted first degree murder, aggravated battery, and the possession and use of firearms, and he unleashed his brutality equally on companions, law enforcement, and strangers. Arroyo's lengthy and serious criminal history reveals a penchant for violence. And his conduct reflects an attitude, in the words of the district court, that he "[doesn't] have to follow the rules." The district court reasonably determined that the statutory purposes of sentencing would be best served by imposing the maximum penalty for his crime. Even Arroyo, who

8

requested a sentence "of say seven years," admitted the propriety of imposing a sentence above the recommended sentencing range. The district court did not abuse its discretion.

## IV. CONCLUSION

We **AFFIRM** Arroyo's sentence.