[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-10732

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VICTOR MANUEL ESTRADA, JR.,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cr-00015-TFM-B-1

————————————

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Defendant Victor Manuel Estrada Jr. appeals his 360-month sentence, which was imposed after he pled guilty to conspiracy to possess with intent to distribute cocaine. On appeal, Estrada argues that his sentence is both procedurally and substantively unreasonable because the district court based it on speculation that he was involved in organized drug trafficking. After careful review and the benefit of oral argument, we conclude that Estrada's sentence is neither procedurally nor substantively unreasonable. For the following reasons, we affirm.

## I.  BACKGROUND

### A.    Estrada's Arrest and First Sentencing

This case began with Estrada's arrest in Mobile County, Alabama. A police officer pulled over a freightliner truck after noticing that it did not have a front license plate as required by state law. The officer identified Estrada as the driver of the truck and a woman named Linda Lancon as the truck's only passenger. While officers spoke with Estrada, a police dog indicated the presence of narcotics in the truck. Police searched the truck and found a box jammed behind the seats. The officers found 32 kilograms of cocaine inside the box. The police arrested Estrada and Lancon.

Estrada pled guilty to conspiracy to possess with intent to distribute cocaine. The district court sentenced him to 360 months' imprisonment. Estrada appealed the sentence to this Court. *See*

*United States v. Estrada*, 823 F. App'x 783 (11th Cir. 2020). We vacated the sentence after concluding that the district court had based the sentence on factual findings that had no support in the record but instead were drawn from evidence introduced at Lancon's trial.[1] *Id.* at 787. We then remanded the case for resentencing. *Id.*

## B.    Estrada's Second Sentencing

Following remand, a probation officer prepared a new Presentence Investigation Report ("PSR") for Estrada. The PSR documented Estrada's 15 prior criminal offenses which resulted in arrests. It noted that Estrada previously had been convicted for several state crimes including failure to stop and render aid, theft, and possession of a controlled substance. According to the PSR, Estrada was convicted of transporting undocumented individuals into the United States in 2003 and 2010—federal crimes for which he served two separate prison sentences.[2] The probation officer calculated

---

[1] Lancon entered a plea of not guilty and was convicted by a jury. On appeal, she challenged her 300-month sentence that was imposed as an upward variance from the guideline range. This Court affirmed Lancon's conviction and sentence, concluding, among other things, that her 300-month sentence was procedurally and substantively reasonable. *See United States v. Lancon*, 835 F. App'x 431, 435–36 (11th Cir. 2020).

[2] The PSR further indicated that Estrada was charged with state crimes of burglary of habitation, assault, sexual assault, and interference with an emergency call stemming from an incident in 2002 involving his estranged spouse, and that Estrada pled guilty to all of those offenses except for the sexual assault charge, which was dismissed. During the sentencing hearing, Estrada noted that he did not plead guilty to the sexual assault charge and disputed the PSR's

Estrada's total offense level as 29 with a criminal history category of V. Based on this offense level and criminal history, the PSR reported that Estrada's range under the Sentencing Guidelines was 140 to 175 months' imprisonment.

At Estrada's sentencing hearing, the government presented several witnesses, including Department of Homeland Security (DHS) agent Don Herrington and Georgia Bureau of Investigations (GBI) agent Jared Coleman.

DHS agent Herrington testified that Estrada said he owned the freightliner truck and Lancon sometimes traveled with him but could not drive the truck. Herrington also testified that GPS tracking data from the truck showed that it traveled back and forth between Laredo, Texas and Atlanta, Georgia. He explained that this route was consistent with trafficking drugs from Mexico because Laredo was near the border and Atlanta was "a known hub for illegal narcotics." Doc. 244 at 42.[3]

According to Herrington, Estrada told investigators that he had previously met his drug delivery contact in Atlanta and then contradicted himself by denying this meeting. Herrington explained that this probably was not Estrada's first time transporting drugs because the drug suppliers allowed him to carry the cocaine in a box in the cab instead of hiding it somewhere inside the truck.

---

recitation of the facts concerning the 2002 incident but did not contest any of his convictions relating to that incident.

[3] "Doc." numbers refer to district court docket entries.

He testified that the individuals who gave Estrada the cocaine let him "pick[] up currency and deliver[] it back to the Texas area," which "led [Herrington] to believe that [Estrada] was in a position of trust" with the drug suppliers. *Id.* at 41. Herrington also noted that the police found $1,500 in Lancon's purse. To Herrington, this amount of cash further suggested involvement in the drug trade because "[m]ost . . . narcotics are dealt in cash." *Id.* at 43.

On cross examination, Estrada's counsel asked Herrington if he knew whether Estrada made the other trips shown in the truck's GPS tracking data. Herrington conceded that he had "nothing that says Mr. Estrada moved cocaine any time except for this trip," but he observed that "the behavior . . . Mr. Estrada exhibited is in line with an individual that is moving narcotics." *Id.* at 51–52.

GBI agent Coleman, an expert on street gangs, also testified during the sentencing hearing. Coleman testified that Estrada's tattoos were consistent with tattoos worn by the "Mexican Mafia" gang to signal their affiliation. Doc. 244 at 58. He explained that the Mexican Mafia was involved in a variety of criminal activity including drug trafficking. Coleman noted that tattoos alone are not enough to identify a gang member. Coleman, however, also opined that someone displaying these tattoos in prison who was not associated with the Mexican Mafia would be forced to either cover them or cut them off and could possibly be killed.

After considering the materials presented at the hearing, the district court credited both agents' testimony and determined that "the evidence is consistent with someone who is a longstanding

member of a drug-trafficking group" and that "Mr. Estrada is involved in organized crime." *Id.* at 71. The district court sentenced Estrada to 360 months' imprisonment. The district court explained that the sentence reflected the court's consideration of the 18 U.S.C. § 3553(a) factors. The sentence also accounted for the seriousness of the offense, Estrada's involvement in the drug trade, and his continual "negative interactions with the criminal justice system." *Id.* at 73.

Estrada objected that his sentence was procedurally and substantively unreasonable. The district court overruled the objection, explaining that the sentence was reasonable in light of all the evidence. Estrada timely appealed his sentence to this Court.

## II.  STANDARD OF REVIEW

"We review the reasonableness of a sentence under an abuse-of-discretion standard." *United States v. Melgen*, 967 F.3d 1250, 1264 (11th Cir. 2020). "In reviewing a sentence for reasonableness, we first consider whether the district court committed any significant procedural error, and next consider whether the sentence was substantively reasonable." *Id.*

When reviewing for procedural reasonableness, "we must ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence." *United States v. Delva*, 922 F.3d 1228, 1255 (11th Cir. 2019) (internal quotation marks omitted). A district court's finding of fact pertaining to sentencing is clearly erroneous only if this Court is "left with a definite and firm conviction that a mistake has been committed." *Melgen*, 967 F.3d at 1265 (internal quotation marks omitted). "When a defendant challenges one of the factual bases of his sentence . . . the Government has the burden of establishing the disputed fact by a preponderance of the evidence. This burden must be satisfied with reliable and specific evidence." *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009) (alteration in original) (internal quotation marks omitted). "A sentencing court may consider any information, (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (internal quotation marks omitted).

"[A]fter it has been determined that a sentence is procedurally sound, we review the sentence's substantive reasonableness." *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010). "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper

factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted).

## III.  ANALYSIS

Estrada contends that his sentence is both procedurally and substantively unreasonable.[4] We address these arguments in turn.

### A.    Estrada's Sentence Is Procedurally Reasonable.

Estrada argues that his sentence is procedurally unreasonable because the district court based it on clearly erroneous facts. Specifically, he contends that the court found that he was a member of the Mexican Mafia gang and based his sentence on this fact even though it was not supported by the record. Estrada is correct that the district court found that his actions were "consistent with someone who is a longstanding member of a drug-trafficking group" and that he was "involved in organized crime." Doc. 244 at 71. The district court partly based Estrada's sentence on these findings. If these findings were clearly erroneous, then Estrada's sentence is procedurally unreasonable.

The district court's findings were based on inferences the court drew from the evidence presented at the sentencing hearing. The district court inferred that Estrada transported other drugs before he was caught and that he was part of a larger drug trafficking

---

[4] Estrada also argues that his case should be remanded to a different district court judge for resentencing. Because we affirm Estrada's sentence, we do not address this argument.

organization. The court based this inference on parts of Herring-ton's testimony about GPS data showing the truck's multiple trips from Texas to Atlanta, Estrada's repudiated admission that he pre-viously met with his Atlanta drug contact, the cocaine's location in the truck which indicated trust by the supplier, Estrada's owner-ship of the truck, and the $1,500 in Lancon's purse in the truck.  The Court also relied on Coleman's testimony that Estrada's tattoos were consistent with those worn by Mexican Mafia members.

Of course, "a defendant should not be sentenced on the basis of groundless inferences." *United States v. Lopez*, 898 F.2d 1505, 1512 (11th Cir. 1990). But a district court can reasonably infer facts "based on common sense and ordinary human experience." *United States v. Baldwin*, 774 F.3d 711, 735 (11th Cir. 2014) (internal quo-tation marks omitted). We previously examined a district court's inference of facts from evidence presented at sentencing in *United States v. Lopez*. Our analysis in that case is instructive.

In *Lopez*, a jury convicted the defendant for conspiracy to possess 400 pounds of cocaine with intent to distribute and for pos-session with intent to distribute. *Lopez*, 898 F.2d at 1508–09. At the sentencing hearing, the government presented a Drug Enforce-ment Administration (DEA) report and a police affidavit substanti-ating that authorities previously found the defendant with $80,000 in cash while he was going through customs. *Id.* at 1512. A narcot-ics-sniffing dog detected the smell of narcotics on the money. *Id.* The defendant explained that he had received the money from a stranger named "[P]oncho" and that he was taking it to his brother-

in-law. *Id.* at 1513 (internal quotation marks omitted). After hearing this evidence, the district court found that the defendant was a "big[] player" in the drug trafficking community and increased his sentence as a result. *Id.* at 1512. On appeal, we affirmed the sentence, explaining that the evidence about the $80,000, combined with the defendant's "conviction of possession of 400 pounds of cocaine, reasonably g[ave] rise to an inference that [the defendant] was a substantial member of the drug trafficking community." *Id.* at 1513. We concluded that the district court did not abuse its discretion by relying on this inference during sentencing. *Id.*

Our reasoning in *Lopez* supports the district court's finding from circumstantial evidence that Estrada was involved in organized drug trafficking. In both *Lopez* and this case, authorities found the defendant with a large quantity of cocaine. Also, as in *Lopez*, the government presented additional evidence at sentencing of the defendant's involvement in a larger drug trafficking organization. The additional evidence included GPS data showing the truck's multiple trips between Texas and Atlanta, Estrada's admission (later recanted) that he had a previous meeting with his Atlanta drug contact, the location of the cocaine the agents found in the cab of his truck, Estrada's ownership of the truck, the $1,500 found at the arrest, and Estrada's tattoos suggestive of membership in the Mexican Mafia. Because the district court drew a reasonable inference from evidence presented at sentencing, its finding was not clearly erroneous.

Estrada argues that "[n]othing in the record, other than inferences from the dated tattoos, supports the district court's conclusion." Appellant Br. at 17. We disagree. Estrada's argument ignores Herrington's testimony connecting Estrada to organized drug trafficking. Estrada points out Herrington conceded that "I have nothing that says Mr. Estrada moved cocaine any time except for this trip." Doc. 244 at 51–52. But Herrington also testified that "the behavior . . . Mr. Estrada exhibited is in line with an individual that is moving narcotics." *Id.* at 51. Herrington could not testify that it was Estrada who drove the truck during the other trips from Atlanta to Texas or that the truck transported cocaine during these other trips. But he did provide evidence that Estrada owned the truck and that Lancon was unable to drive it. He also testified that this route was consistent with drug trafficking because of Laredo's proximity to Mexico and Atlanta's prominence as a hub for distributing narcotics. Nothing in the record indicates that anyone else had access to Estrada's truck or provides any other reason for these trips. Based on this information and the rest of Herrington's testimony, the court did not clearly err by finding that Estrada had a connection to organized drug trafficking.

Because the district court did not base its sentence on a clearly erroneous fact, the sentence is not procedurally unreasonable.

## B.    Estrada's Sentence Is Substantively Reasonable.

Estrada also argues that his sentence is substantively unreasonable. This argument, too, appears to be based on Estrada's

contention that in sentencing him the district court relied on an unproven connection to organized drug trafficking. This argument has no merit. As we explained above, the district court reasonably inferred Estrada's involvement in organized drug trafficking based on the evidence presented at the sentencing hearing.

To the extent Estrada argues that his sentence is substantively unreasonable because it exceeded his guideline range, that argument also fails. It is true that the district court sentenced Estrada to 360 months of imprisonment, which was above the guideline range of 140 to 175 months. Under our precedent, however, we "may not presume that a sentence outside the guidelines is unreasonable." *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010). Still, a "justification for the deviation from the guidelines range must be sufficiently compelling to support the degree of the variance." *Id.* at 1186 (internal quotation marks omitted). We conclude that the district court justified its deviation from the guideline range in this case.

The district court must impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, sufficiently punish the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). The district court explained that its sentence reflected the § 3553(a) factors and took into account Estrada's criminal history, recidivism, and involvement in organized drug trafficking. "We have

upheld large upward deviations based solely on an offender's extensive criminal history." *United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016); *see also Rosales-Bruno*, 789 F.3d at 1263 ("Under substantive reasonableness review, we have repeatedly affirmed sentences that included major upward variances from the guidelines for defendants with significant criminal histories that the sentencing courts weighed heavily."). Here, the PSR showed that Estrada had numerous previous convictions and that, at the sentencing hearing, Estrada objected only to the PSR's factual description concerning one of his prior offenses. Further, the PSR assigned no criminal history points to five of Estrada's unobjected-to convictions. From these facts, the district court could reasonably conclude that the guideline range inaccurately reflected Estrada's criminal history. *See Osorio-Moreno*, 814 F.3d at 1287 ("[D]istrict court reasonably concluded that [defendant's] guideline range understated his criminal history. . . [when] [s]ix of [his] 20 convictions did not result in any criminal-history points.").

Applying our precedent, the district court could weigh heavily Estrada's criminal history in deciding his sentence. It was also within the court's discretion to consider that after each conviction, Estrada committed more crimes. In addition, the district court relied on the evidence of Estrada's involvement in organized drug trafficking. Together, Estrada's criminal history, recidivism, and connection to organized drug trafficking were sufficient justifications for sentencing Estrada substantially above his guideline

range, so the district court's variation was not substantively unreasonable.

We conclude that Estrada's sentence was within the range of reasonable sentences dictated by the facts of the case. The district court did not abuse its discretion in sentencing him to 360 months in prison.

## IV.  CONCLUSION

For these reasons, we affirm Estrada's sentence.

**AFFIRMED.**