[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14079

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

J. SANTOS MORENO-SALAZAR,
a.k.a. Oscar Gutierrez,
a.k.a. Santos Moreno,
a.k.a. Eduardo Moreno-Salazar,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00087-TFM-N-1

———————————

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, J. Santos Moreno-Salazar appeals his 36-month sentence for illegal reentry. Moreno[1] argues that his sentence is substantively unreasonable. After careful review, we affirm.

## I.     FACTUAL BACKGROUND

### A.  Offense Conduct[2]

On April 17, 2021, Moreno was arrested by the Foley, Alabama, Police Department and booked for driving under the influence of alcohol ("DUI"). Moreno told the police his name was Oscar Gutierrez, and he was booked under this alias. While he was in custody, Immigration and Customs Enforcement ("ICE") ran Moreno's fingerprints in criminal and immigration

---

[1] In his brief on appeal, the appellant shortens his full name to "Moreno." Accordingly, we do the same.

[2] The description of Moreno's offense conduct is drawn from the factual proffer contained in Moreno's plea agreement.

databases, which revealed his true identity and returned a "removed alien" alert along with his criminal history.

The records showed that Moreno was removed to Mexico on October 9, 2008, and on April 16, 2013. Prior to the 2013 removal, Moreno was arrested in Florida for the crime of "hit and run" and later convicted of leaving the scene of a crash involving personal injury.

As of April 2021, Moreno had not filed a claim or petition that would have allowed him to enter or remain in the United States legally. In April 2021, Moreno did not have permission from the U.S. Attorney General or the Secretary of the Department of Homeland Security to be found voluntarily in the United States.

As to Moreno's April 2021 DUI charge, an individual called the police after observing Moreno's car swerving into oncoming traffic. The responding officer observed that Moreno was unsteady on his feet and slurred his speech. Moreno denied he had been drinking and refused to take a breathalyzer test or to perform field sobriety tests. The charges were later *nolle prossed*.

## B. Indictment and Guilty Plea

In May 2021, an indictment charged Moreno with one count of illegal reentry, in violation of 8 U.S.C. § 1326(a), (b)(1).

Pursuant to a plea agreement, Moreno pled guilty. The district court accepted his plea and adjudicated him guilty of illegal reentry.

## C. Presentence Investigation Report ("PSI")

Moreno's PSI assigned him a base offense level of 8. His base offense level of 8 was: (1) increased by eight levels because Moreno committed a felony before the first time he was ordered removed; and (2) decreased by three levels for acceptance of responsibility, resulting in a total offense level of 13.

The PSI assigned three criminal history points to Moreno's 2011 Florida conviction for leaving the scene of a crash involving personal injury. It listed seven other adult convictions but did not assign criminal history points to those convictions because they were more than 15 years old. *See* U.S.S.G. § 4A1.2(e)(3). Those seven convictions were: (1) four DUI convictions, (2) disorderly intoxication, (3) using a firearm while under the influence of alcohol, and (4) battery–touch or strike. Moreno's three criminal history points resulted in a criminal history category of II.

Moreno's total offense level of 13 and criminal history category of II yielded an advisory guidelines range of 15 to 21 months. The statutory maximum sentence was ten years.

The PSI stated that Moreno reported abusing alcohol in the past and stated that he had not consumed alcohol in ten years. He denied that he was intoxicated at the time of his arrest on April 17, 2021. He stated that his stomach was hurting him, which caused him to swerve while driving.

The PSI highlighted Moreno's criminal history category as a factor that might warrant departure under U.S.S.G.

§ 4A1.3(a)(1), noting that the court could consider "whether or not the defendant's criminal history category adequately reflects the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."

Moreno did not object to the PSI.

### D. Sentencing Hearing

At sentencing, the district court adopted the PSI's calculation of Moreno's 15-to-21–month advisory guidelines range. The district court stated that it planned to impose an upward departure because of Moreno's repeated criminal history of driving under the influence, including the driving under the influence charge that brought him into custody this time.[3] It stated that those convictions, as well as the other convictions that did not incur criminal history points, were "indicative that [Moreno's] overall conduct and demeanor while in this country unlawfully is beyond just a person who is here merely trying to make a living."

Moreno argued that, aside from the most recent charge, those convictions occurred "quite a while back," which was why the guidelines range came out where it did.

---

[3] Although the district court stated that it was imposing an upward departure, its other comments at sentencing and the parties' substantive reasonableness arguments on appeal efffectively treat the 36-month sentence as an upward variance, and we will refer to it as such.

Next, the district court gave Moreno the chance to allocute. Moreno apologized to the court and to the government for being in the country illegally. Moreno stated that he was ashamed for having lied, and he did so because it was difficult in Mexico and because his father lives in the United States. Moreno stated that he made mistakes when he was younger. He endangered his life and the lives of others, and he was remorseful for that.

Moreno stated that he had not been drinking when he was arrested on April 17, 2021. That day, he had eaten spicy food and was driving home with terrible heartburn and was not paying attention or holding the steering wheel with both hands as he should have been. After his arrest, the police tested his alcohol level at the jail and the result was zero. Moreno stated that it had been more than eleven years since he last took a sip of alcohol.

The district court stated that, even if Moreno was not under the influence at the time of his most recent arrest, the circumstances still indicated that he voluntarily chose to drive even though he could not do so safely. It stated that it had no problem with the application of the guidelines in a typical case. But Moreno's case was unique because he had a number of convictions for driving under the influence, which was also the reason he was stopped on this occasion. Driving under the influence presented a serious danger to the public. And on this latest occasion Moreno again had driven "in such a way on a rainy night where somebody could have been hurt." The district court

determined that a within-guidelines sentence would not be appropriate because Moreno had posed a danger to the community many times, including in the most recent incident.

The district court sentenced Moreno to a term of 36 months' imprisonment. It found that the guidelines range was not appropriate to the facts and circumstances of this case and would not provide a reasonable sentence. It further found that the 36-month sentence addressed the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

Moreno objected that 36 months was more than twice the low end of the guidelines and stated his belief that it was an abuse of discretion to impose a sentence so far above the guidelines range, especially after the court had heard his version of what happened regarding his most recent arrest.

The district court stated that Moreno had a lengthy history of driving under the influence and that, at a minimum, he was driving recklessly on the 2021 occasion. It determined that the sentence was appropriate.

This is Moreno's appeal.

## II.    DISCUSSION

Moreno argues that his 36-month sentence is substantively unreasonable. We review the reasonableness of a sentence under a deferential abuse-of-discretion standard employing a two-step process. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir.

2008).   First, we examine whether the district court committed any significant procedural error.  *Id.*  Because Moreno claims no procedural error, we move to the second step of determining whether his sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors and the totality of the circumstances.[4] *Id.*  The party challenging the sentence—here, Moreno—carries the burden of showing that the sentence is substantively unreasonable.  *Id.* at 1189.

This Court will vacate a sentence on substantive reasonableness grounds only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). A district court may attach great weight to one § 3553(a) factor over others, and the weight it attaches to any specific factor is committed to its sound discretion.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

---

[4] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from the defendant's future crimes; (5) the advisory guidelines range; and (6) the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a).

A major upward variance from the advisory guideline range requires a justification that is "sufficiently compelling to support the degree of the variance." *Irey*, 612 F.3d at 1196 (quotation marks omitted). This Court has upheld large upward variances based solely on the defendant's extensive criminal history. *See United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016) (holding that a 120-month sentence was reasonable because the defendant had 20 prior convictions and the guidelines range of 51-63 months understated his criminal history). Further, an upward variance well below the statutory maximum sentence indicates that a sentence is reasonable. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021).

After careful review, we cannot say that Moreno's 36-month sentence is substantively unreasonable. Although the district court emphasized Moreno-Salazar's criminal history, it was entitled to place more weight on this factor than the Guidelines did. *See Osorio-Moreno*, 814 F.3d at 1287. Moreno had seven convictions, including four DUI convictions, that were not factored into his criminal history category, and his present offense arose after he was charged with another DUI. Although Moreno denied drinking on that occasion, he did not object to the PSI's description of his April 2021 arrest, including that he was seen swerving into oncoming traffic. The district court considered Moreno's version of events surrounding his April 2021 arrest and found that, even if Moreno was not drunk, his reckless driving once again supported the sentence.

The district court also acknowledged Moreno's objection that most of his convictions occurred more than 15 years ago, but it found the convictions still indicated a pattern of dangerous behavior. The court acted within its wide discretion in finding that the guidelines range understated Moreno's criminal history and his danger to the public. Finally, the district court's upward variance was well below the ten-year statutory maximum, which further indicates reasonableness. *See Riley*, 995 F.3d at 1278.

Moreno has not shown that the district court's sentence was "outside the range of reasonable sentences dictated by the facts of the case" or that its upward variance lacked a "sufficiently compelling" justification. *See Irey*, 612 F.3d at 1190, 1196. Accordingly, we affirm.

**AFFIRMED.**