**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11141

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

GARY HANDFORD,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cr-00063-SDM-AAS-1

_____

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Gary Handford appeals his 132-month sentence for posses-
sion of a firearm as a convicted felon in violation of 18 U.S.C.
§ 922(g)(1). That sentence was above the guideline range of thirty

2                    Opinion of the Court                    25-11141

to thirty-seven months, but below the statutory maximum of 180 months. Handford argues that the district court abused its discretion in imposing an upward variance for three reasons: (1) it improperly relied on one of Handford's previous sentences for the same offense, (2) it failed to give appropriate weight to the calculated guideline range, and (3) it unreasonably weighed the relevant factors. We disagree with each of Handford's arguments and **AFFIRM** the district court.

## I.

A Florida police officer stopped Handford for a traffic violation. After learning that Handford was the subject of two active arrest warrants, the officer attempted to place him under arrest. Handford refused to comply and ignored all verbal commands to stop resisting. As the officer struggled to place Handford in cuffs, Handford pulled his right hand towards his right front pocket, revealing a loaded pistol. The officer eventually subdued Handford and secured the pistol. Later, as he was transferred from state to federal custody, Handford spontaneously told law enforcement that he would rather go to prison than have his family visit his grave if he was "caught" without a firearm.

At the time of the incident, Handford was a convicted felon and could not legally possess firearms. The Bureau of Alcohol, Tobacco, Firearms and Explosives inspected the pistol and concluded it had traveled in interstate commerce. Accordingly, Handford was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He pleaded guilty as part of a plea agreement.

Before his sentencing hearing, the probation office prepared a presentence investigation report, which highlighted Handford's lengthy and violent criminal history. As a minor, he was convicted of both battery and assault. As an adult, he has been convicted of many more crimes, including theft, burglary, trespass, battery, domestic violence, resisting an officer with a deadly weapon, possession and sale of cocaine, and unlawful possession of a firearm. He has also been arrested many times for other offenses, including engaging in a riot in a detention facility, grand theft auto, false imprisonment, and aggravated assault with a firearm. At the time of his arrest, Handford also faced charges for possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, and felony battery. In addition to his arrests and convictions, Handford frequently violated his parole.

Handford's prior conviction for being a felon in possession of a firearm is especially relevant here. According to the report, in that instance, Handford beat his girlfriend's face, pulled her hair and ear, and bit the top of her head after she greeted her former boyfriend's brother. When she tried to escape, Handford brandished a gun and threatened to kill her. Handford pleaded guilty to violating section 922(g) and was sentenced to 168 months in prison. Due to an intervening change in the law, he was later resentenced to 127 months. While in prison, he received eight disciplinary infractions. Upon his release, he violated his parole twice.

Based on a total offense level of seventeen and a criminal history category of three, the probation office calculated a guideline range of thirty to thirty-seven months. The vast majority of Handford's criminal convictions were not considered due to their age. The report noted that the maximum term of imprisonment for violations of section 922(g) is fifteen years. The report also stated that Handford's extensive criminal record and history of violence may warrant an upward variance.

At his sentencing hearing, pursuant to the terms of the plea agreement, both parties requested a sentence within the guideline range. Handford apologized for his actions, acknowledged his criminal history, and mentioned his difficult childhood. Handford's counsel also spoke favorably of Handford as a client. Handford asserted that he was a model inmate while in prison and had not resisted arrest.

The district court imposed a sentence of 132 months. It began by discussing the 18 U.S.C. § 3553 sentencing factors, including the guideline range. The court explained that it considered Handford's and his counsel's statements, statements submitted by Handford's family members, the nature of his offense, his criminal history, and the need for deterrence and community safety. The court noted Handford's "long and . . . unbroken line of arrests and convictions," many of which involved firearms and violence. Doc. 63 at 14. It observed that Handford's enrollment in drug treatment and rehabilitation programs had little effect. It concluded that, given his history, recidivism was "almost a certainty." *Id.* at 17.

The court imposed an upward variance. It concluded that the "peculiarities" of the sentencing guidelines resulted in a relatively low criminal history score, which was "unrepresentative of the entire picture." *Id.* The court referenced Handford's previous sentence of 127 months for the same conviction. Due to Handford's repeated parole violations and subsequent convictions, the court held that this sentence was insufficient. Accordingly, the court sentenced Handford to 132 months in prison.

Handford timely appealed.

## II.

We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010). A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors. *Id.* at 1189. Under this deferential standard, we vacate the sentence only if we "are left with the firm and definite conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (citing *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)). The party challenging the sentence bears the burden of establishing its unreasonableness. *United States v. Sotelo*, 130 F.4th 1229, 1245 (11th Cir. 2025).

### III.

Handford contends that the district court's sentence was substantively unreasonable because it relied on a previous sentence, disregarded the guideline range, and unreasonably weighed the sentencing factors. We address each argument in turn.

First, Handford asserts that the district court improperly considered his previous section 922(g) conviction when sentencing him for the instant offense. Handford believes the district court, rather than engaging in its own analysis of the sentencing factors, treated the earlier sentence as a "floor."

When imposing a sentence under 18 U.S.C § 3553, district courts must consider several factors, including "the kinds of sentences available," as well as the need "to protect the public," "to afford adequate deterrence," "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "to reflect the seriousness of the offense." When weighing these factors, district courts may consider the length of prior sentences. *See United States v. Shaw*, 560 F.3d 1230, 1240–41 (11th Cir. 2009) (affirming upward variance from thirty-seven to 120 months where "shorter sentences had done nothing to get Shaw off his determined course of crime"); *United States v. Overstreet*, 713 F.3d 627, 638–39 (11th Cir. 2013) (affirming upward variance from 188 to 420 months where previous, shorter sentences did not deter the defendant).

Here, the district court did not abuse its discretion in considering the prior sentence. Since the crimes were the same, the previous conviction was clearly relevant. *See United States v. Nyhuis*, 8 F.3d 731, 739 (11th Cir. 1993) ("Prior convictions of a defendant routinely are used to determine the quantity of sentence."). Like the courts in *Shaw* and *Overstreet*, the district court could consider a previous, ineffective sentence as a useful benchmark among many factors.

Handford's argument that the district court used the previous conviction as a "floor" in lieu of conducting its own review is meritless. As discussed below, the district court carefully considered the sentencing factors, as well as Handford's allocution. Moreover, the court never stated that it was constrained by the previous sentence. Instead, it treated the sentence as one factor among many. Considering Handford's criminal history, the court reasonably concluded that a lighter sentence would fail to meet the goals of deterrence and public safety. It expressly held that such a sentence would be "inconsistent with Section 3553(a)." Doc. 63 at 27. This conclusion was not an abuse of discretion.

Second, Handford complains that the district court did not properly weigh the probation office's guideline range. He argues that the district court never mentioned the guideline range when pronouncing sentence and failed to justify its upward adjustment.

Handford is mistaken. Since *United States v. Booker*, 543 U.S. 220 (2005), the U.S. Sentencing Guidelines are advisory and a court need only consider them during sentencing. *United States v.*

*Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006). As the probation office recognized in its report, the district court was free to impose an upward variance considering Handford's numerous convictions and overall violent history.

Although the court varied upward, it clearly considered the guideline range as a relevant factor. As Handford conceded at sentencing, the district court correctly determined the guideline range after receiving input from both parties. The court repeatedly referenced the guideline range throughout sentencing. Importantly, the court explained why it was deviating from the guideline range when it explained that the "peculiarities" of the "scoring system" resulted in a low criminal history score, which it viewed as "unrepresentative of the entire picture." Doc. 63 at 17. It supported this conclusion with numerous references to Handford's criminal record and long history of recidivism. Handford's real argument, therefore, is not that the court failed to consider the guideline range, but that it did not assign it the weight Handford would have liked. But the district court was entitled to give certain factors more weight than others. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Once again, the district court did not abuse its discretion in doing so.

Third and finally, Handford argues that the district court failed to justify its "extreme variance" in this case and unreasonably weighed the relevant factors. He contends that the district court also failed to weigh certain mitigating factors, including Handford's acceptance of responsibility and his cooperativeness.

The district court adequately justified its decision to impose an upward variance. Handford is a career criminal. Many of his crimes, including his previous conviction for unlawfully possessing a firearm, are marked by bouts of extreme violence. His participation in rehabilitation, supervised release, and community control programs were all unsuccessful. The court was especially troubled by his post-arrest statement that he would rather return to prison than stop carrying a firearm, which it viewed as a "commitment to recidivism." Handford was committing crimes within a year of his release after serving a decade in prison. As the court put it: "[I]f that's not a case for an upward [variance], I'm having difficulty conceiving exactly what is." Doc. 63 at 18. With the section 3553 factors all weighing in favor of a long prison sentence, the court adequately justified its decision to impose an upward variance.

Other indicators of reasonableness also weigh in favor of the court's decision. For example, although it was higher than the guideline range, the sentence fell well below the maximum penalty of 180 months. *See United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). Compared to other upward variances we have upheld, and considering his history, Handford's sentence is hardly "extreme." *See United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016) (affirming upward variance of 120 months despite a range of thirty to thirty-seven months due to defendant's "staggering 20 convictions").

The district court was also reasonable in how it weighed Handford's mitigating factors. Although Handford argues that he

fully accepted responsibility, his statements before the district court suggest otherwise. At sentencing, he falsely stated that he was a model prisoner, that his crimes were attributable to youthful indiscretion (even though he committed crimes throughout his forties and fifties), and that he had not resisted arrest in the instant case.

The court carefully considered the mitigating factors. It permitted Handford to speak twice before pronouncing sentence. It reviewed Handford's exhibits, including photographs of his daughter and testimonial statements written by family members. It also considered the impact of Handford's sentence on his daughter. In short, the court properly balanced "human understanding and sympathy" with the goals of criminal justice. Doc. 63 at 26. But as mentioned, the court did not have to give all the factors equal weight. *Rosales-Bruno*, 789 F.3d at 1254. Weighing Handford's "lamentable crimes" and history of recidivism on one end, and his mitigating factors on the other, the district court did not abuse its discretion in concluding that Handford came up short.

In sum, we cannot say the district court abused its discretion by failing to consider relevant factors, by giving significant weight to an irrelevant factor, or by committing a clear error of judgment. *Irey*, 612 F.3d at 1188.

**IV.**

**AFFIRMED.**