[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13085

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAIRO RODRIGUEZ-CUERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:19-cr-00545-TPB-AEP-2

_____

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Jairo Rodriguez-Cuero appeals his 120-month sentence for one count of conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States. First, he argues that the government breached the parties' plea agreement by making unsupported statements during the sentencing hearing. Second, he contends that his 120-month sentence is unreasonable because the district court relied upon those unsupported statements. As a remedy for both alleged errors, he asks us to vacate his sentence and remand his case for resentencing by a different district judge. Because we are writing solely for the parties, we will not set out the facts at length in this opinion.

## I.

Rodriguez-Cuero's first argument on appeal is that the government breached its plea agreement with him by making a "surprise claim" at his sentencing hearing that he conspired with an uncle and brother to engage in drug trafficking. Because Rodriguez-Cuero did not object to the alleged breach before the district court, we review for plain error rather than *de novo*. *United States v. De La Garza,* 516 F.3d 1266, 1269 (11th Cir. 2008). "Under plain error review, there must be (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously

affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* The defendant must show that the error was "prejudicial"—*i.e.*, that it "affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993)). And to show prejudice in this context, Rodriguez-Cuero must prove that the breach affected his sentence. *Puckett v. United States*, 556 U.S. 129, 142 n.4, 129 S. Ct. 1423, 1433 n.4 (2009).

"'A material promise by the government, which induces a defendant to plead guilty, binds the government to that promise.' Hence, the government breaches a plea agreement when it fails to perform the promises on which the plea was based." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016) (citations omitted) (quoting *United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007) (per curiam)). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding of the agreement when he entered the plea." *Thomas*, 487 F.3d at 1360.

Rodriguez-Cuero contends that the government breached the following language in the plea agreement by advancing "unsupported facts and conjecture at sentencing":

> The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of

the defendant's criminal activities, . . . to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. . . .

He asserts that the government "improperly stated" that he conspired with his uncle and brother "to further international narcotics trafficking over decades."

We disagree. The government did not argue at the sentencing hearing that Rodriguez-Cuero conspired with his uncle and brother to engage in international drug trafficking. When explaining its request for "a low-end guideline sentence" per the terms of the plea agreement, the government said the following:

> Mr. Rodriguez Cuero had what would seem to be significant ties to the drug trafficking trade at large. If you look through his presentence report, it makes note of the fact that his uncle had been previously convicted in 2003 for a boat trip, and then an older brother of his was also convicted in 2015 of another boat trip. This shows that at least there were these familial connections over a decade of time to the drug-trafficking organization at large.

> Then, also, it goes to Mr. Rodriguez Cuero's superior knowledge of both the organization and then the consequences of getting on these boats and engaging in these trips. Each of the individuals, his uncle and his brother, were both sentenced to 108 months. . . .

> . . . .

> . . . Mr. Rodriguez Cuero, as a family member, was aware of this, obviously noted their absence from their country. Yet, despite that, he chose to continue along that path. He chose to engage with the drug-trafficking organization . . . .

At no point did the government suggest that the basis for his conspiracy conviction was a conspiracy with his family members. Rather, it argued that he was a knowledgeable conspirator who knew he was breaking the law because other members of his family had made the same choice and been criminally punished for it.

Rodriguez-Cuero also suggests that the government breached the plea agreement by not correcting misstatements and inaccuracies forwarded by the district court. Again, we disagree. Even assuming that the district court made such errors (an assumption we will dispute momentarily—see *infra* Part II), the plea agreement did not obligate the government to correct those alleged errors. The relevant plea agreement provision states that the government "reserve[d]" the "right and obligation" "to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies." Put simply, the government reserved the right to respond to, and correct, erroneous comments made by the defendant or his attorney. Rodriguez-Cuero could not reasonably have interpreted this provision to mean that the government had an affirmative duty to correct any misstatement made by the district court. *See Hunter*, 835 F.3d at 1324 ("Whether the government violated the agreement is judged according to the defendant's reasonable understanding at

the time he entered his plea." (quoting *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992))).

Moreover, even if Rodriguez-Cuero could establish that the government plainly breached the plea agreement, he cannot satisfy the prejudice prong of plain error review. In other words, he cannot show that the breach affected his sentence. *De La Garza,* 516 F.3d at 1269; *Puckett*, 556 U.S. at 142 n.4, 129 S. Ct. at 1433 n.4. The district court explained at the sentencing hearing the relevance of Rodriguez-Cuero's familial relations:

> What I was taking away from that point was the idea that he's not somebody who is just sort of walking down the street, like we see in dope cases here in Florida where it's some kind of clueless young kid and someone says, hey, will you go sell or deliver this dope to somebody down the street? Or will you go pawn this gun in the pawn shop? And they are, like, oh, well, okay, I'll do it, and not really fully grasping what they are doing.
>
> Where he's living in an environment where people around him have made the choice to get involved in this, got caught, got sent to prison. So what I'm taking away from this is he basically made a calculated decision. Hey, they are offering me a heck of a lot of money. I don't have a job now. I need money. I'll balance the risk of getting caught and going to prison in the United States versus however much money I can make here, and I'll make a choice to violate the law . . . . That's what I took away from that point.

The district court never thought that the government was arguing that Rodriguez-Cuero engaged in a drug-trafficking conspiracy with his uncle and brother. Rather, it viewed the government's argument as relating to his knowing violation of the law. Accordingly, even if the government had breached the plea agreement as Rodriguez-Cuero argues on appeal, he cannot show reversible error because the district court did not base his sentence on the notion that he conspired with his uncle and brother.[1]

## II.

Rodriguez-Cuero's second argument on appeal is that his sentence is unreasonable because it was based upon an impermissible sentencing factor and erroneous facts. "We review the reasonableness of the district court's sentences for an abuse of discretion, employing a two-step process." *United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020) (per curiam). "We first look to whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range, . . . selecting a sentence based on clearly erroneous facts, or failing to

---

[1] Rodriguez-Cuero also quibbles with the government's statement that his uncle and brother went on "boat trip[s]"—*i.e.*, that they attempted to transport drugs into the United States. But he never tethers this alleged misstatement to his argument that the government breached the plea agreement. Even if he had, it is doubtful that he could have shown that the government's use of this language warrants reversal under our plain error standard of review because this language likely did not affect his sentence for the same reasons discussed above.

adequately explain the chosen sentence." *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) (per curiam). "For a factual finding to be 'clearly erroneous,' this court, 'after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed.'" *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quoting *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998)).

Second, "[i]f the district court's decision contains no significant procedural error, we review the substantive reasonableness of the sentences 'through the prism of abuse of discretion.'" *Gomez*, 955 F.3d at 1255 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)). The abuse-of-discretion standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004)). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.* (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc) (Birch, J., dissenting)). The appropriate factors for sentencing are contained in 18 U.S.C. § 3553(a).[2] *Id.* Whether a factor the district

---

[2] Section 3553(a) requires that the district court "shall impose a sentence sufficient, but not greater than necessary," to accomplish multiple goals, including

court considered is "impermissible" is a legal question we review *de novo. United States v. Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008). A sentence may "be unreasonable, regardless of length, if the district court's selection of the sentence was substantially affected by its consideration of impermissible factors." *United States v. Williams*, 456 F.3d 1353, 1361 (11th Cir. 2006) (footnote omitted), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007).

A district court may not sentence a defendant based on "groundless inferences." *United States v. Lopez*, 898 F.2d 1505, 1512 (11th Cir. 1990). But a district court may make reasonable inferences "based on common sense and ordinary human experience." *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013); *see also United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009) ("We are unable to say that the district court's inference that the cash came from trafficking in methamphetamine was

---

to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. In addition, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the guideline sentencing range; any pertinent policy statements; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been convicted of similar conduct; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1), (3)–(7).

speculative to the point of being clearly erroneous.  It was, instead, a reasonable inference that the court was free to make.").

On appeal, Rodriguez-Cuero argues that his sentence was procedurally unreasonable because it was based on clearly erroneous facts that were introduced for the first time at sentencing.  *See Trailer*, 827 F.3d at 936 (stating that a district court commits a "significant procedural error" when it bases a sentence "on clearly erroneous facts").  He identifies three erroneous facts that allegedly affected his sentencing: (i) that he maintained a relationship with his uncle and brother; (ii) that he knew the dates of, reasons for, and lengths of their sentences; and (iii) that he had "superior knowledge" of the relevant drug-trafficking organization due to his familial relationship with his uncle and brother.  Moreover, he argues that the government incorrectly asserted that his brother's sentence was 108 months rather than 84 months.

We cannot conclude that the district court's sentence relied upon any clearly erroneous facts, or that the district court relied upon unreasonable inferences from the record evidence.  Rodriguez-Cuero contends that the district court selected his sentence "primarily" because "his biology, alone, inferred a drug-trafficking conspiracy."  As already explained, the government never argued, and the district court never found, that Rodriguez-Cuero engaged in a drug-trafficking conspiracy with his uncle and brother.  Rather, the district court determined that Rodriguez-Cuero likely had knowledge of his uncle and brother's convictions and sentences and that he, presumably, chose to engage in drug trafficking despite

knowing it was against the law. The district court explained its reasoning for the 120-month sentence as follows:

> The other people in his life got 108 months. I'm sure he found out about that someway or another. Even though I get that his brother isn't close to him, the uncle was very close to him because the uncle is the one that raised him as one of ten children. So he knew that 108 months was a possibility.
>
> That didn't deter him from doing this. And then the amount of drugs involved here, while I understand the point about the street value maybe isn't the right way to look at it, we do know it was a lot of drugs, and that's bad. So in light of those factors, his sentence is 120 months, which is below the bottom of the guidelines but I think is the appropriate sentence that translates to about ten years, and I think that accomplishes what I'm trying to do here, which is send a message to people -- or to him that you can't do this. It's bad.

Moreover, in its denial of Rodriguez-Cuero's post-sentence motion for relief, the court stated that its "purpose" when referencing his uncle and brother's sentence "was to indicate that [he] was at least somewhat aware that federal prison would be a possibility if he were caught by U.S. authorities, yet he was not deterred from engaging in similar conduct." It affirmed that Rodriguez-Cuero's below-guidelines sentence "was calculated with no regard to past offenses of family members."

To the extent that the district court did base Rodriguez-Cuero's sentence on his likely knowledge of his uncle and brother's sentences, that was a "reasonable inference" based on the record, not a clearly erroneous factual finding. *Chavez*, 584 F.3d at 1367. Rodriguez-Cuero acknowledged his awareness of his family members' sentences in his sentencing memorandum: "Mr. Rodriguez Cuero's uncle and brother had succumbed to the temptation in 2003 and 2015, and were each serving nine (9) year sentences in the [United States].  Mr. Rodriguez Cuero knew the hardship his uncle's wife, and his brother's family endured from their men's absence."  Accordingly, we are not "left with a definite and firm conviction" that the district court's assumption that Rodriguez-Cuero knew of his family members' sentences was clearly erroneous. *Rodriguez-Lopez*, 363 F.3d at 1137 (quoting *Foster*, 155 F.3d at 1331).

Because we have determined that Rodriguez-Cuero's sentence was not based on any clearly erroneous facts, we now review "the substantive reasonableness" of his sentence under the abuse-of-discretion standard of review. *Gomez*, 955 F.3d at 1255. Rodriguez-Cuero argues that basing his sentence on erroneous facts or impermissible factors is an abuse of discretion, but, as just explained, the district court did not do so.  Even assuming *arguendo* (contrary to our holding above) that Rodriguez-Cuero's likely knowledge of his uncle and brother's sentence was an impermissible factor, Rodriguez-Cuero has not shown that his sentence is unreasonable because his sentence was not "substantially affected by [the district court's] consideration of" his family

members' past sentences. *Williams*, 456 F.3d at 1361. As mentioned, the district court said that it calculated his sentence "with no regard to past offenses of family members." Accordingly, we cannot conclude that Rodriguez-Cuero's below-guidelines sentence is substantively unreasonable. *Cf. United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016) ("A sentence imposed well below the statutory maximum penalty is another indicator of reasonableness.").

In summary, the government did not plainly breach its plea agreement with Rodriguez-Cuero. His sentence was procedurally reasonable because the district court did not rely on erroneous facts and did not clearly err in considering the facts of Rodriguez-Cuero's personal history and family. Additionally, his sentence was substantively reasonable and below the guideline range. Accordingly, we affirm.

**AFFIRMED.**